CHARLES CARNEY *et al.*

*v.*

THE VILLAGE OF MARSEILLES *et al.*

*Filed at Ottawa January 22, 1891.*

1. MUNICIPAL CORPORATIONS—*streets and bridges—duty to keep in repair—liability.* The general Incorporation law gives to cities and villages the absolute control of the streets, bridges, etc., within their corporate limits, and of this power, and the resulting duty to keep their streets and bridges in reasonable repair so that the public may pass over them in safety, such cities and villages can not divest themselves.

2. SAME—*lack of funds to keep streets and bridges in safe condition— resulting duty—and liability.* While a municipal corporation can not be required to make improvements or repairs the cost of which will be in excess of its corporate power to raise money for such purposes, yet, having exclusive control, it is required by law to maintain its bridges kept open for the public use in a reasonably safe condition.

3. If, for any reason, as, that the cost of repair will be more than the funds at its disposal which it might by the exercise of its corporate powers command, the repair is impossible, the street or bridge, if known to be unsafe, should not be left open and held out to the public as safe for its use, but should be closed, and the public warned, by notice, of the danger of passage over the same.

26—136 ILL.

4. If a city or village allows a bridge on a public street to remain open for the public use after it is known to be unsafe, without warning or notice of the danger in its use, the municipality will be estopped, in a suit for damages resulting from its want of a discharge of its duty, from showing that it had no funds with which to repair the same.

5. SAME—*power of taxation—change therein—whether affecting prior liability.* A change in the organization of a village, by its adoption of the general Incorporation law, after a cause of action has accrued against it, whereby it is authorized to levy and collect a tax of two per cent instead of one-half of one per cent, will in no manner affect the liability of the village, but the suit will progress the same as if no change in the power of taxation had been made.

6. The revenue derived by taxation must be levied and collected by a city or village under and by virtue of the power conferred by the law in force at the time of its levy and collection. The fact that the tax is levied to pay a judgment recovered before a change in the power of taxation, will make no difference in this respect.

7. SAME—*taxing power—may be changed.* The tax-payer of a municipal corporation has no vested interest in the limitation upon the corporate taxing power, but the legislature may increase the taxing power of such bodies after they have incurred liabilities.

8. JUDGMENT—*conclusiveness—neglect to make defense at law—remedy in equity.* A court of equity will not enjoin the collection of a judgment on the ground that the party seeking relief had a defense to the action at law which he failed to plead or show, in the absence of fraud or mistake of fact by which he was prevented from interposing the defense.

9. While a court of equity will enjoin the misapplication of public funds to an unauthorized use, yet when the liability of a municipality, which represents the people and tax-payers within its limits, has been determined in a court of competent jurisdiction, in the absence of fraud such liability can not be re-litigated in a court of equity at the suit of a tax-payer. Such judgment is not void merely because there was a legal defense to the action.

WRIT OF ERROR to the Circuit Court of LaSalle county; the Hon. DORRANCE DIBELL, Judge, presiding.

Mr. BIRD BICKFORD, and Mr. P. MCARTHUR, for the plaintiffs in error:

The want of funds to repair, and want of power to raise the means with which to keep the bridge in repair, exempt the village from liability for injuries arising from the unsafe condition of the bridge. *Browning* v. *Springfield*, 17 Ill. 143;

*Erie* v. *Schwingh*, 22 Pa. St. 384; *Hines* v. *Lockport*, 50 N. Y. 236; *Weed* v. *Ballston Spa*, 76 id. 329; Dillon on Mun. Corp. 776, 789, 1017, 1018.

The charter of 1861, in force at the time of the injury, governs this contention. Dillon on Mun. Corp. 23, 26-66; *State* v. *Hoban*, 22 Wis. 266; *Trustees* v. *District*, 28 Mich. 228.

When the rate of taxation is limited by law, *mandamus* will not lie except for surplus, after paying the ordinary expenses out of the highest taxation. *United States* v. *New Orleans*, 31 Fed. Rep. 537; *East St. Louis* v. *People*, 6 Bradw. 76; *Grant* v. *Davenport*, 36 Iowa, 401.

Messrs. BREWER & STRAWN, for the defendants in error:

The collection of a tax is never enjoined except the injury is irreparable, and this must be shown by the bill. High on Injunctions, sec. 491; Cooley on Taxation, 536; *Porter* v. *Railroad Co.* 76 Ill. 591; *Ritler* v. *Patch*, 12 Cal 298; *Coulson* v. *Harris*, 43 Miss. 728.

The village had no power to abdicate to the town of Rutland its care and legal obligations over Main street, and the bridge thereon. *Kreigh* v. *Chicago*, 86 Ill. 407; *Town of Mechanicsburg* v. *Meredith*, 54 id. 84.

If it had not the ability to raise means to keep the bridge in repair, it should have closed the same, and not allowed the public to use the same. But if the village had a defense to the suit against it, which it failed to plead, a court of equity will not enjoin the collection of the judgment. 1 High on Injunctions, 165-169; *Albro* v. *Dayton*, 28 Ill. 325; *Lucas* v. *Spencer*, 27 id. 15; *Kern* v. *Strausberger*, 71 id. 413; *Higgins* v. *Bullock*, 73 id. 205; *Ramsey* v. *Perley*, 34 id. 504; *Allen* v. *Smith*, 72 id. 331; *Walker* v. *Shreve*, 87 id. 474; *Clark* v. *Ewing*, 93 id. 572; *Smith* v. *Powell*, 50 id. 21.

A private tax-payer can only enjoin where his individual grievances are distinct from those of the public. High on Injunctions, secs. 275, 1553; *Miller* v. *Grandy*, 13 Mich. 540;

*Doolittle* v. *Supervisors*, 18 N. Y. 155; *Lovingston* v. *Wider*, 53 Ill. 302; *Kelly* v. *Chicago*, 62 id. 279.

A tax voluntarily paid can not be recovered back. Cooley on Taxation, 566; *Falls* v. *Cairo*, 58 Ill. 403.

There is no vested right in a limitation of the taxing power of a village or city, or in any general law. The increase of the taxing power created no new liability in the corporation.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

This was a bill in chancery, by Charles Carney and others, tax-payers of the village of Marseilles, in La Salle county, against said village and George Howland, to enjoin the payment of a judgment obtained by Howland against the village, and from the imposition and collection of taxes upon the property of complainants for the payment of that judgment.

The bill alleges that on May 3, 1886, Howland recovered judgment against the village, in the La Salle circuit court, for the sum of $5500, for personal injuries, resulting from the failure of the village to keep and maintain in suitable repair a certain bridge within said village, and which, on appeal, was affirmed. It is further alleged, that thereupon, on demand of Howland, the village authorities appropriated of the funds of the village the sum of $1000, and, by ordinance, levied for the year 1888 the sum of $4475, included in which was the sum of $1000 to be paid on said judgment. It was also alleged, on information and belief, that nearly all of the said tax had been collected, and the greater portion thereof paid into the village treasury, and that the village would, unless restrained, pay said $1000 to Howland on his judgment.

The bill sets up two principal grounds for the equitable relief sought: First, that the village had a good defense to the suit of Howland, in which said judgment was obtained, which was not interposed by the village, and that complainants, tax-payers, are not responsible for the negligence of the village authorities in that regard; and second, that the tax levied is

illegal, it being in excess of the amount authorized by law to be assessed by the village, and being illegally levied, no portion of it can lawfully be paid upon said judgment. These are the principal points made, and will be considered in their order.

It is alleged that the village had no funds, and was unable, within the limitation upon its powers of taxation, to procure the means necessary to keep and maintain the bridge in safe repair, and it is insisted that the village was therefore relieved of all responsibility for the injury caused by its being out of repair. If this question could be raised in this way and by these complainants, upon the facts alleged, they were not entitled to the relief sought, nor could that defense, if interposed, have availed the village. The bill alleges that the bridge in question spanned the Illinois river, and was situated at the south end of Main street, in said village; that said street and bridge made a continuous public highway through said village and across said river, and "the same is and has been for many years, and was at the time of the accident" to Howland, the only avenue for public travel between the north and south sides of said river, between Ottawa and Seneca, a distance of fifteen miles. The injury to Howland, which formed the basis of recovery of the judgment, occurred in 1883, and it is shown, by clear implication at least, that after 1878 the bridge was a free bridge within the village, connected with its streets, and forming therewith a highway open and traveled by the public in entering and departing from the village, and that it was the only avenue for public travel from or in going to points on the south side of the river. It is also alleged, in effect, that from 1878 the bridge "was in a dilapidated, rotten, dangerous and unsafe condition, both in its substructure and superstructure," and so continued to the time of the injury.

By the special charter under which the village was incorporated and acting at the time of the injury, as well as under the general City and Village act, which it subsequently adopted, the village was given absolute control of the streets, bridges,

etc., within its limits. Of this power, and the resulting duty to keep its streets and bridges in reasonable repair, so that the public might pass over them in safety, the village could not divest itself. (*Kreigh* v. *Chicago*, 86 Ill. 407.) The bill, except its allegations in respect of the illegality of the present tax, is based upon the principle that the village was not responsible for the non-repairing of the bridge, because of its inability, under the limitations on its power of taxation, to raise funds with which to repair the same, and admits, by implication, the duty to repair, except for that reason. By fair intendment, from the allegations of the bill, it must be regarded as conceded that this bridge, within the limits of the village, connected with one of its streets, and under its control, had been for practically five years before, and at the time of the injury was, in a dilapidated, rotten and unsafe condition, and during that time was kept open for travel, and was traveled by the public as the only thoroughfare for crossing to or from the south side of the river.

While a municipal corporation can not be required to make improvements or repairs the cost of which will be in excess of its corporate power to raise money for such purposes, yet, having exclusive control, it is required by law to maintain its bridges kept open for the use of the public, in reasonably safe condition and repair; and if, for any reason, as, that the cost of repair will be more than the fund at the disposal of the municipality, or which it might, by the exercise of its corporate powers, command, the repair is impossible, the street or bridge, if known to be unsafe, should not be held out to the public as safe for its use. The duty of the corporate authorities would be to close the bridge against the public, and warn them of the danger of passage over it until put in proper repair. The public have no means, other than appears on the surface, of determining the safety of the bridges forming part of public thoroughfares, and may rely, as common experience shows they do, upon a reasonable discharge of the duty by the municipality. Any one finding a bridge connected with and form-

ing part of one of the streets of the village, open for use, and traveled by the general public, would, in the absence of anything to apprise him of danger, drive upon it, relying upon its safety, and would be justified in so doing. We said in the principal case when before us (*Marseilles* v. *Howland,* 124 Ill. 547): "We are willing to concede that the village was not bound to maintain the bridge as a part of the public highway unless it saw proper to do so. It had the power to condemn the bridge as a nuisance and close it up." The principal question there was as to the acceptance of the bridge by the village, and it was held to have accepted it, and was responsible for failure to suitably maintain the same. If there was lack of funds with which to repair, and the bridge was unsafe, the village authorities knew it or were chargeable with knowledge thereof, while presumably neither Howland nor the public had any notice of either fact; and, clothed with ample power to condemn and close the bridge if unable to repair, and thus have prevented the injury, the village, according to this bill, for five years permitted this constant menace to the persons and property of all who accepted the invitation tendered by its acts, to remain open for the public use, without warning or notice of the danger, and it could not be heard, in a suit for damages resulting from its want of discharge of duty, to say that it had no funds with which to repair. Every municipality is required to keep all bridges, etc., within its corporate limits, which it holds out to the public as safe for its use, in reasonable repair and condition.

Independently of this, however, this bill seeks to re-litigate the liability of the village to Howland for the injuries sustained by him through its alleged negligence in failing to keep said bridge in repair. It is manifest the question of the liability of the village was settled and finally determined in the suit at law, and can not, as we think, be re-opened and re-litigated in this forum, except for fraud, accident or mistake in the rendition of judgment in that action. A court of equity will not

enjoin the collection of a judgment on the ground that the party seeking relief had a defense to the action at law, which he failed to plead, in the absence of fraud or mistake of fact by which he was prevented from interposing it. (High on Injunctions, secs. 165-169; *Lucas* v. *Spencer,* 27 Ill. 15; 28 id. 325; *Ramsey* v. *Perley,* 34 id. 504; *Smith* v. *Powell,* 50 id. 21; *Allen* v. *Smith,* 72 id. 331; *Clark* v. *Ewing,* 93 id. 572.) Courts of equity will enjoin the misapplication of public funds to an unauthorized use. (*Colton* v. *Hanchett,* 13 Ill. 615; *Livingston County* v. *Weider,* 64 id. 427; *Davis* v. *Wilson,* 65 id. 525.) But where the liability of the municipality, which represents the people and tax-payers within its limits in respect of municipal concerns, has been determined in a court of competent jurisdiction, in the absence of fraud such liability can not be relitigated in a court of equity, at the suit of a tax-payer. The judgment, the payment of which is sought to be enjoined, is not void, even if a legal defense existed which the village failed to interpose. There is no allegation of the want of jurisdiction in the court rendering the judgment, and if it had been rendered without any defense at all, it would, in the absence of fraud, be conclusive as to the liability of the village. There is here no allegation or pretense that the judgment was the result of collusion between the village and Howland, or that any fraud was practiced upon the village, or the court rendering said judgment.

The charter under which the village was organized and acting at the time of the injury, limited the power of taxation for municipal purposes to one-half of one per cent of the assessed value of property within the village. Subsequent to the injury, and before the levy of 1888, collection of which is sought to be enjoined, the village re-organized under the general Incorporation act of 1872, which authorizes a levy of not to exceed two per cent on all taxable property of the village. The levy was two per cent, and it is contended that as the limit of taxation was one-half of one per cent when the dam-

ages accrued, a levy of two per cent can not be made and any part of it used to pay said judgment; that all Howland can be entitled to is the excess of taxes, etc., levied at one-half of one per cent, after the current expenses of the village are paid. By the change in the organization of the village, its liability for damages or other indebtedness was in no way altered or released. (Rev. Stat. art. 1, chap. 24, sec. 12.) After the change of organization, suits, although for liabilities existing prior thereto, would progress to final judgment precisely as if no change had been effected. The judgment, when obtained, fixed the liability of the village and determined the amount of the debt to be paid from its revenues, and it is wholly immaterial, in this respect, whether the cause of action accrued or the judgment was rendered before or after the re-organization. The corporate liability became thereby determined, to be paid from the funds and revenues of the village. The revenue derived by taxation must necessarily be levied and collected under and by virtue of the power conferred by the law in force in the village at the time of its levy and collection. By adopting the general Incorporation act the liability of the village was not changed,—it still remained, as before, a legitimate corporate purpose to pay and discharge corporate indebtedness, but thereby the village became invested with the additional power of taxation therein provided. When collected, the taxes became corporate funds, to be paid out, as directed by the proper village authority, for any legitimate corporate purpose.

No tax-payer can have a vested interest in the limitation upon the corporate taxing power. (Cooley's Const. Lim. 284.) Municipal corporations are creatures of the legislative will, and, generally speaking, are subject to its absolute control. There may be, and are, exceptions to this broad rule, but they arise only when necessary to protect some private right.

We are of opinion that the bill was properly dismissed, and the decree so ordering will be affirmed.

*Decree affirmed.*