## TOWN OF FAIRFAX v. GIRAUD.

No. 2386.    Opinion Filed March 11, 1913.

(131 Pac. 159.)

1.  **MUNICIPAL CORPORATIONS — Defective Streets — Liability.**
    "A municipality is relieved of liability for the defective condition of its streets only when it has no means within its control to effect repairs.   But, if it has the means within its control and fails or refuses to exercise them, it will not be excused or relieved of liability."

2.  **SAME — Personal Injuries — Contributory Negligence.**   A person traveling on a public street of a city, which is in contant use by the public, while using the same with reasonable care and caution, has a right to presume that such street is in reasonably safe condition, and is reasonably safe for ordinary travel by night, as well as by day, throughout its entire width, and is free from all dangerous holes and obstructions.

3.  **SAME—Burden of Proof.**   In an action against a municipal corporation for personal injuries, there is no presumption that the plaintiff or defendant is guilty of negligence, and, in order to entitle the plaintiff to recover, it is sufficient for him to show that the defendant was guilty of negligence, with nothing in the circumstances establishing contributory negligence on his part; and, when such facts are proven, it devolves upon the defendant to prove affirmatively that the plaintiff was guilty of contributory negligence.

4.  **APPEAL AND ERROR—Verdict—Conflicting Evidence.**   When there is any evidence reasonably tending to support the verdict of a jury, the same will not be reversed on appeal because of evidence which may conflict therewith.

5.  **DAMAGES—Personal Injuries—Excessive Recovery.**   On a trial of an action to recover damages for injuries sustained on account of negligence of a town in the maintenance of its street, it appeared that plaintiff was 42 years of age and was teaching music for a livelihood; that, prior to her injuries, she earned not less than from $12 to $15 per week, and for five or six months thereafter was totally unable to earn anything, and since then had been able to earn only $4 or $5 per week; that her injuries were due to the breaking of both of the bones in one of her lower limbs, just above the ankle; that the other was badly sprained,

Town of Fairfax v. Giraud.

and she was seriously bruised as a result of her fall, suffering intensely for several months which continued to the date of the trial. The evidence showed that her injuries were permanent and that she would probably be a cripple for life. Verdict for $2,000 held not excessive.

(Syllabus by the Court.)

*Error from District Court, Osage County;*
*John J. Shea, Judge.*

Action by Kate Giraud against the Town of Fairfax. Judgment for plaintiff, new trial denied, and defendant brings error. Affirmed.

*D. L. Hubler* and *Grinstead, Mason & Scott,* for plaintiff in error.

*J. M. Worten,* for defendant in error.

DUNN, J. This case presents error from the district court of Osage county. On the 16th day of May, 1910, defendant in error, as plaintiff, commenced her action in the said court to recover $8,500 for damage alleged to have been sustained by certain injuries which she suffered, due to the negligence of the town in its maintenance of one of its crossings. In her petition she alleged:

"That prior to December 1, 1909, the said defendant city, under and by virtue of its corporate power, had assumed control and authority of its streets, alleys, sidewalks, curbs, and gutters; that at said time it was in full control and management of the same; that at said time the said defendant was wrongfully, willfully, wantonly, recklessly, negligently, and carelessly permitting the crossing of the gutter from the curb line or concrete sidewalk to the street crossing at the northwest corner of the intersection of Main and Elm streets in said town, going east, to be and remain in a dangerous and unsafe condition for pedestrians to pass over, and had been so permitting it for several months; that the concrete sidewalks or curb at said point was about two feet higher than the bottom of the mud gutter over which the public had to pass to the end of the stone street crossing in going east; that the end of said stone street crossing extended west to within about three feet of said concrete sidewalk or curb, and was six inches higher than the bottom of the said mud gutter; that the only means provided by the defendant for crossing said mud

gutter was one small stone step on the west side of same, next to the said concrete curb, which was about three feet long, about six inches high, and about a foot wide, and which was only put there for a temporary use and was not sufficiently planted or imbedded as to be solid and not tilt or turn when the weight of an ordinary grown person was thrown upon it; that the top of said step was piled up with mud nearly to a level with the top of the curb and no light at said crossing—all of which made the crossing a very dangerous and unsafe one, and all of which was well known to the defendant, its officers, agents, and employees, or ought to have been known, and could have been known by the exercise of reasonable or ordinary care, but was wrongfully, willfully, wantonly, recklessly, negligently, and carelessly permitted to be and remain in such condition, and had been permitted by said defendant to so exist for several months. Plaintiff states. that in the month of November, 1909, she was temporarily located at the town of Fairfax, Okla., and that on the night of December 1, 1909, she had occasion to go east on the north side of Elm street from the west side of Main street over the crossing above described; that it was a rainy, dark night with no lights except from the business houses, which were only about sufficient to enable one to see the outlines of the walks and crossings; that she was unfamiliar with this crossing and did not know of its unsafe and dangerous condition, but supposed it was all right and safe, as it was one of the most public crossings in the city; that she proceeded to cross over said gutter from said sidewalk at the northwest corner of Main and Elm streets above set out and across said Main street; that, when she stepped from the top of the curb or sidewalk into the mud on the said stone step, she slipped and tottered, and, in her effort to regain her balance, the step gave away or turned with her and she fell upon said stone or some other hard substance and into the mud and water in the gutter, getting muddy and wet from head to foot, breaking both bones in her lower left limb, badly spraining her right ankle, and receiving such a bodily jar that she was caused to suffer the most excruciating pain in her head and body for several days; that she suffered severe pain from the broken and sprained limbs for weeks and months, and suffers yet from same; that she has had rheumatism in the broken limb all winter and spring as a result of said injury; that said broken limb is yet swollen and very weak and affected with numbness, which is very disagreeable and painful, and which disables her in getting around. Plaintiff states that her injuries are permanent; that the pain and suffering has

been such a shock to her nervous system that the same has given away and she can never get over it."

For its answer, defendant admitted that it was a municipal corporation, incorporated on the 7th day of September, 1909, prior to which time the inhabitants of defendant town were an unincorporated community. All of the other allegations of plaintiff's petition were denied. Defendant then alleged:

"Fifth. That prior to the 7th day of September, 1909, the First National Bank of Fairfax, Okla., had caused to be built a good and substantial cement sidewalk, twelve feet wide, and a curb about fifteen inches high, along the east end of lot sixteen in block twelve in the town of Fairfax, aforesaid; that, by subscription or otherwise, the citizens of said community had built and maintained a good and substantial stone footwalk across Main street east from a point about four feet north from the southeast corner of the sidewalk above mentioned; that said footwalk was about fifteen inches below the top of the cement sidewalk mentioned, and extended to within about 24 inches of the curb heretofore mentioned; that, by donation, subscription, or otherwise, a good and substantial stone step, to wit, a stone three feet long, fourteen inches wide, and six inches thick was placed against the curb connecting with said stone footwalk; and that said stone step, street crossing, and cement sidewalk were constructed and in place and had long been used prior to the incorporation of the said town, were reasonably safe and sufficient for the purpose for which used, and that the plaintiff suffered her alleged injuries solely, purely, and exclusively by reason of her own negligence and failure to exercise ordinary care as it was her duty to do, for which reason the defendant is not liable therefor."

To the foregoing answer, plaintiff filed a reply in effect a general denial. On these issues the case was tried to a jury, which returned its verdict finding in favor of plaintiff in the sum of $2,000. On motion for new trial being filed and denied, the case has been duly lodged in this court for review.

A number of assignments of error are made and argued by defendant in the very complete brief filed in its behalf by counsel, the first of which relates to the action of the court in striking from defendant's answer the third, fourth, and sixth paragraphs thereof, which set out, in substance, that, at the time of its incorporation, it was in possession of no funds and was without au-

thority to levy or collect general taxes for the purpose of repairing, constructing, or otherwise improving streets, sidewalks, and crossings up to and including the 1st day of December, 1909, nor had it, prior to the said date, promulgated any resolution, by-law, or ordinance for the construction or repair of street crossings, and was wholly without funds or authority within said time to do so.  That the territory contained in the town was a portion of a road district and the poll tax fund had been exhausted prior to its incorporation, and that the town could not levy general revenue taxes prior to March 1, 1910, which could not be collected for five months thereafter.  For a number of reasons counsels' contention on these propositions cannot be sustained.  First, the defect was of such a character that no funds or money would have been required to repair it.  The proof, while controverted, was sufficient to establish the averments of the petition as to the condition of the stepping-stone.  The town marshal, who testified that he was also street commissioner, with a shovel and a few moments of time, and without the expenditure of a penny, could have made firm this stone and rendered the same safe for passage.  Or if for any reason the dangerous place in the highway could not have been made safe in this manner, it was the duty of the town to have closed the same to travel and not to have allowed it to remain open as a pitfall for people who at least were tacitly invited to use it.

This same question was involved in the case of *Carney et al. v. Village of Marseilles et al.,* 136 Ill. 401, 26 N. E. 491, 29 Am. St. Rep. 328, the court holding that, while a municipal corporation cannot be required to make improvements or repairs, the cost of which would be in excess of its corporate power to raise money for such purposes, yet having exclusive control of its streets, it was required by law to maintain its bridges in a reasonably safe condition, and also that:

"If for any reason, as that the cost of repair will be more than the funds at its disposal which it might, by the exercise of its corporate powers, command, the repair is impossible, the street or bridge, if known to be unsafe, should not be left open and held out to the public as safe for its use, but should be closed, and the public warned by notice of the danger of passage over the same."

The rule seems to obtain that "a municipality is relieved of liability for the defective condition of its streets only when it has no means within its control to effect repairs. But if it has the means within its control, and fails or refuses to exercise them, it will not be excused or relieved of liability." 28 Cyc. 1343, 1344, and cases cited in notes; *Erie City v. Schwingle,* 22 Pa. 384, 60 Am. Dec. 87; *Prideaux et ux. v. City of Mineral Point,* 43 Wis. 513, 28 Am. Rep. 558; *Hutson v. City of New York,* 7 N. Y. Super. Ct. 289, afterwards affirmed in 9 N. Y. 163, 59 Am. Dec. 526.

In the case of *Erie City v. Schwingle, supra,* which was a case wherein the same question arose as in the case at bar, Chief Justice Black said:

"If a mere vote of the council could have laid the tax, their disinclination to do so would hardly have been thought of as a defense. The people being their own representatives in regard to all taxation beyond a half per cent., they are bound to see to it themselves as much as the council would have been, if the matter had been intrusted to their discretion. No matter where the authority of a municipal corporation may be lodged, nor what organs may be designated to speak its will, neither the council nor the people can rid themselves of a public duty, by any vote of their own, or any refusal to vote."

In our judgment the town had at its command ample means which, had it undertaken to have exercised, would have produced for it a fund ample to remedy the defect, even conceding funds were required. Section 848, Comp. Laws 1909, provides:

"In addition to the powers heretofore granted by statute, the boards of trustees of towns and villages shall have authority to levy and collect a license tax on auctioneers, contractors," etc.

Here follows a list of virtually every species and line of employment which might be engaged in within a city or town. The statute then provides:

"The tax so levied and collected therefrom shall be applied for the use and benefit of such towns and villages as may be directed by the councils or boards of trustees thereof."

Herein was provided a ready method whereby a fund amply sufficient to have made safe the crossing where the accident herein occurred, and it was the duty of the officials to have availed them-

selves thereof, and neglect to do this will not relieve the town of liability.

Defendant's second assignment of error is to the point that the court erred in overruling its demurrer to the plaintiff's evidence. The basis of this complaint is that the evidence shows that plaintiff had no cause of action against the defendant; second, that the evidence showed plaintiff guilty of contributory negligence; and third, that the evidence fails to show any notice to the officers and agents of the defendant of the dangerous or imperfect condition in the walk or step at the place complained of. On the first and second of these propositions we will say that we have carefully read not only the testimony set forth in the briefs of the respective parties, but also the record, and entertain no doubt whatever upon the sufficiency of the proof to show not only plaintiff's injuries and her right of action, but that, in using the crossing and the step in question at this much frequented corner on these streets, she was in no wise guilty of contributory negligence. The evidence shows that the accident occurred on a cloudy night with no lights except those which shone from the business houses and which were not sufficient to disclose the dangerous condition of the step.

The rule in such a case is stated in the case of *City of Stillwater v. Swisher*, 16 Okla. 585, 85 Pac. 1110, as follows:

"A person traveling on a public street of a city, which is in constant use by the public, while using the same with reasonable care and caution, has a right to presume that such street is in reasonably safe condition and is reasonably safe for ordinary travel by night, as well as by day, throughout its entire width and is free from all dangerous holes and obstructions."

And also in *City of Oklahoma City v. Reed*, 17 Okla. 518, 87 Pac. 645, that:

"In an action against a municipal corporation for personal injuries, there is no presumption that the plaintiff or defendant is guilty of negligence, and, in order to entitle the plaintiff to recover, it is sufficient for him to show that the defendant was guilty of negligence, with nothing in the circumstances establishing contributory negligence on his part; and, when such facts are proven, it devolves upon the defendant to prove affirmatively that the plaintiff was guilty of contributory negligence."

Nor was it essential that actual notice be brought home to the officers of the village. The evidence showed that the step had been in the condition which caused plaintiff's injuries during all of the time of the incorporation of the town, and probably for some time prior thereto. Its public location was such that a jury had a right to assume that the officers either did or should have had notice thereof; the rule being as laid down in the case of *Town of Norman v. Teel,* 12 Okla. 69, 69 Pac. 791, that:

"The sufficiency of notice to fasten liability upon a city for a defective sidewalk is a question of fact to be determined by a jury under all the circumstances surrounding the particular case. It is not essential that the corporation shall have actual notice. If the defective condition of the street or sidewalk has existed for such a period of time that, by the exercise of ordinary care and diligence, the city authorities could have repaired the defect and placed the street or sidewalk in a reasonably safe condition, and it fails to do so, then it is liable for any injuries that may be occasioned thereby by reason of such negligence, provided the injured party was in the exercise of ordinary care."

See, also, *City of Guthrie v. Finch,* 13 Okla. 496, 75 Pac. 288.

The fourth assignment of error raises a question on which the evidence is conflicting, the condition of the step. That of the plaintiff supports the verdict, and that of certain witnesses for the defendant disputes the facts upon which plaintiff relies. Under these circumstances the affirmative evidence being sufficient to support the verdict, the same will prevail, as the issue thereon was determined by the verdict. The court denied to defendant the right to establish the custom of the First National Bank of maintaining its light at the corner where this accident occurred. In this action, in our judgment, no error was committed.

It is contended that the verdict was the result of passion and prejudice, and that the amount of recovery allowed plaintiff was excessive. In this we are not able to concur. The facts disclose that plaintiff was a widow, 42 years of age, and was teaching music for a livelihood. Prior to her injuries she earned not less than from $12 to $15 per week, and for five or six months thereafter was totally unable to earn any money at all, and since had not been able to earn more than $4 or $5 per week. That she had contracted and was required to pay heavy doctor bills,

and her injuries consisted of the breaking of both bones of one of her lower limbs just above the ankle; that the other was badly sprained, and she was badly bruised as a result of the fall and suffered intensely for several months, her suffering continuing to the time of the trial. The evidence showed that the injuries were permanent and that she would probably be a cripple for life. Under these circumstances, in our judgment a verdict for $2,000 was not excessive, nor is there any evidence to show that the same was the result of prejudice or passion.

The instructions given by the court were not excepted to by the defendant, and, viewing the entire record and conclusion of the trial, we are not able to say that substantial justice was not reached in the verdict.

The order of the trial court denying a motion for a new trial is accordingly affirmed.

All the Justices concur.