J-A13033-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| JARENNY ROS | : | |
| | : | |
| Appellee | : | No. 1393 EDA 2021 |

Appeal from the Order Entered June 24, 2021
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0002778-2021

BEFORE: OLSON, J., DUBOW, J., and KING, J.

MEMORANDUM BY KING, J.:                              **FILED JULY 07, 2022**

Appellant, the Commonwealth of Pennsylvania, appeals from the order

entered in the Philadelphia County Court of Common Pleas, which granted the

motion to quash the bill of information filed by Appellee, Jarenny Ros, and

dismissed the charges brought against Appellee. We reverse and remand.

The trial court set forth the relevant facts of this appeal as follows:

> Philadelphia Police Officer Jonathan Arch testified that, in
> the early hours of May 31, 2020, he received a radio call for
> a burglary in progress at a shopping center located at 3000
> Island Avenue in the city and county of Philadelphia. Officer
> Arch arrived at that location at approximately 2:45 a.m.,
> where he observed a white Nissan Altima, which did not
> have a license plate, speeding through the shopping plaza.
> The vehicle hit a curb and became disabled, at which time a
> male, alleged to be Zahir Smith … exited from the driver
> side door. Subsequently, one female, alleged to be Julisa
> Prak … exited the front passenger door, and another
> woman, alleged to be [Appellee], fled from the rear of the
> vehicle. The officer ordered [Appellee] to stop, and placed
> her in custody in the back of his patrol car. Officer Arch

testified that he observed that the windows and doors of the Snipes store at the shopping center were all broken, and that he observed clothing and sneakers in and around the white Altima. On cross examination, Officer Arch stated that there was a riot taking place in the shopping center at the time he encountered the defendants, and that many people were looting stores in that location. He further testified that he did not see the white Altima or the defendants themselves near the Snipes store, that there are several stores in the shopping center in question, and that many of those stores also appeared to have been looted. The officer positively identified all three defendants as the individuals he encountered fleeing the white Altima.

Philadelphia Police Detective Francesco Campbell testified that on the date in question, he executed a search warrant on the vehicle. Inside was a large amount of merchandise from the Snipes store. He indicated that he knew it was from Snipes because a store employee identified the merchandise from its tags, and estimated its value in the thousands of dollars. Officers also recovered a firearm from underneath the merchandise. As a result of this incident, all three codefendants were arrested and charged with burglary, multiple violations of the Uniform Firearms Act [("VUFA")], and related charges.

(Trial Court Opinion, filed 9/7/21, at 1-2).

On April 8, 2021, the court conducted a preliminary hearing, and Appellee and her co-defendants' cases were held for court. On April 20, 2021, the Commonwealth filed a criminal information charging Appellee with burglary, criminal trespass, theft by unlawful taking, receiving stolen property, conspiracy, VUFA, and possessing an instrument of crime ("PIC"). Appellee filed a "motion to quash bills of information" on May 12, 2021. In the motion, Appellee asserted that "there is no evidence [Appellee] was involved with the burglary or participated in the conspiracy. There is also no evidence of

dominion or control over [or] knowledge of the firearm." (Motion, filed 5/12/21, at ¶3).

On June 24, 2021, the court conducted a hearing regarding Appellee's pretrial motion. That same day, the court granted Appellee's motion and dismissed all charges. Specifically, the court held that the Commonwealth had failed to make a *prima facie* case with respect to all charges against Appellee. The Commonwealth timely filed a notice of appeal on July 8, 2021. On July 21, 2021, the court ordered the Commonwealth to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The Commonwealth timely filed its Rule 1925(b) statement on July 26, 2021.

The Commonwealth now raises one issue for our review:

> Did sufficient evidence support a *prima facie* case for the charges of burglary, criminal trespass, conspiracy, theft by unlawful taking, receiving stolen property, [VUFA], and [PIC], where [Appellee] and her two co-defendants were observed fleeing the scene of the crime, a Snipes retail store; the windows to the store had been broken; goods belonging to the store were found scattered throughout the car [Appellee] fled from; and a gun was found in the back seat underneath the stolen goods?

(Commonwealth's Brief at 6).

The following principles apply to this Court's review of an order granting a pretrial petition for writ of *habeas corpus*:

> We review a decision to grant a pre-trial petition for a writ of *habeas corpus* by examining the evidence and reasonable inferences derived therefrom in a light most favorable to the Commonwealth. Whether the Commonwealth satisfied its burden of establishing a *prima facie* case for each charged crime is a question of law, to which this Court's standard of

review is *de novo* and our scope of review is plenary.

A pre-trial *habeas corpus* motion is the proper means for testing whether the Commonwealth has sufficient evidence to establish a *prima facie* case. To demonstrate that a *prima facie* case exists, the Commonwealth must produce evidence of every material element of the charged offense(s) as well as the defendant's complicity therein. To meet its burden, the Commonwealth may utilize the evidence presented at the preliminary hearing and also may submit additional proof.

**Commonwealth v. Wyatt**, 203 A.3d 1115, 1117 (Pa.Super. 2019) (internal citations and quotation marks omitted).

"The Commonwealth establishes a *prima facie* case when it produces evidence that, **if accepted as true**, would warrant the trial judge to allow the case to go to a jury." **Commonwealth v. Ouch**, 199 A.3d 918, 923 (Pa.Super. 2018) (emphasis in original). "The Commonwealth need not prove the elements of the crime beyond a reasonable doubt; rather, the *prima facie* standard requires evidence of the existence of each and every element of the crime charged." **Id.**

On appeal, the Commonwealth argues that the facts established at Appellee's preliminary hearing "permitted a reasonable inference that [Appellee] unlawfully entered the Snipes store and participated with her two companions in stealing the merchandise." (Commonwealth's Brief at 15). Further, the Commonwealth asserts that this evidence "supported an inference that [Appellee] had knowledge of the gun, had the power to exercise control of the gun, and … had constructive possession of the gun." (**Id.** at

17). The Commonwealth insists that it established a *prima facie* case for all the charges against Appellee. The Commonwealth concludes that this Court must reverse the order granting Appellee's pretrial motion. We agree.

The Pennsylvania Crimes Code defines burglary in relevant part as follows:

> **§ 3502. Burglary**
>
> **(a) Offense defined.—**A person commits the offense of burglary if, with the intent to commit a crime therein, the person:
>
> \* \* \*
>
> (4) enters a building or occupied structure, or separately secured or occupied portion thereof that is not adapted for overnight accommodations in which at the time of the offense no person is present.

18 Pa.C.S.A. § 3502(a)(4).

The Pennsylvania Crimes Code defines criminal trespass in relevant part as follows:

> **§ 3503. Criminal trespass**
>
> **(a) Buildings and occupied structures.—**
>
> (1) A person commits an offense if, knowing that he is not licensed or privileged to do so, he:
>
> \* \* \*
>
> (ii) breaks into any building or occupied structure or separately secured or occupied portion thereof.

18 Pa.C.S.A. § 3503(a)(1)(ii).

The Pennsylvania Crimes Code defines theft by unlawful taking or disposition in relevant part as follows:

### § 3921.  Theft by unlawful taking or disposition

  **(a)   Movable property.—**A person is guilty of theft if he unlawfully takes, or exercises unlawful control over, moveable property of another with intent to deprive him thereof.

18 Pa.C.S.A. § 3921(a).  The Crimes Code defines "movable property" as:

Property the location of which can be changed, including things growing on, affixed to, or found in land, and documents although the rights represented thereby have no physical location.   "Immovable property" is all other property.

18 Pa.C.S.A. § 3901.   "Deprivation" occurs if a person: (1) "withhold[s] property of another permanently"; or (2) "dispose[s] of the property so as to make it unlikely that the owner will recover it." *Id.*

The Crimes Code defines the offense of receiving stolen property as follows:

### § 3925.  Receiving stolen property

  **(a)   Offense defined.**—A person is guilty of theft if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that is has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner.

18 Pa.C.S.A. § 3925(a).  "[T]o establish the *mens rea* element of the crime of receiving stolen property, the Commonwealth must prove that the accused possessed property with 'guilty knowledge,' *i.e.*, knowing that it has been

stolen, or believing that it has probably been stolen." ***Commonwealth v. Newton***, 994 A.2d 1127,1132-33 (Pa.Super. 2010). "A person 'knows' that goods are stolen if he is 'aware' of that fact." ***Id.*** at 1132. Regarding the latter part of the test, "it is clear that [the statute] is designed to criminalize situations where the defendant does not know for certain that the goods are stolen, but nevertheless has: (1) considered the possibility that the goods are stolen and (2) concluded that the answer is at the very least, 'probably.'" ***Id.***

The Pennsylvania Crimes Code defines the offense of PIC as follows:

**§ 907. Possessing instruments of crime**

   **(a) Criminal instruments generally.**—A person commits a misdemeanor of the first degree if he possesses any instrument of crime with intent to employ it criminally.

*   *   *

   **(d) Definitions.**—As used in this section, the following words and phrases shall have the meanings given to them in this subsection:

*   *   *

   **"Instrument of crime."** Any of the following:

      (1) Anything specially made or specially adapted for criminal use.

      (2) Anything used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have.

18 Pa.C.S.A. § 907(a), (d).

The Crimes Code defines the offense of criminal conspiracy as follows:

**§ 903. Criminal conspiracy**

        **(a)  Definition of conspiracy.**—A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

        (1)  agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

        (2)  agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

                                *   *   *

        **(c) Conspiracy    with    multiple    criminal objectives.**—If a person conspires to commit a number of crimes, he is guilty of only one conspiracy so long as such multiple crimes are the object of the same agreement or continuous conspiratorial relationship.

18 Pa.C.S.A. § 903(a), (c).

        "To sustain a conviction for criminal conspiracy, the Commonwealth must establish that the defendant (1) entered into an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent, and (3) an overt act was done in furtherance of the conspiracy." **Commonwealth v. Melvin,** 103 A.3d 1, 42 (Pa.Super. 2014) (citation omitted).

        The essence of a criminal conspiracy is a common understanding, no matter how it came into being, that a particular criminal objective be accomplished.  Therefore, a conviction for conspiracy requires proof of the existence of a shared criminal intent.  An explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its

                                - 8 -

activities. Thus, a conspiracy may be inferred where it is demonstrated that the relation, conduct, or circumstances of the parties, and the overt acts of the co-conspirators sufficiently prove the formation of a criminal confederation. The conduct of the parties and the circumstances surrounding their conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt.

*Id.* at 42-43. "Once the trier of fact finds that there was an agreement and the defendant intentionally entered into the agreement, that defendant may be liable for the overt acts committed in furtherance of the conspiracy regardless of which co-conspirator committed the act." ***Commonwealth v. Barnes***, 871 A.2d 812, 820 (Pa.Super. 2005), *aff'd*, 592 Pa. 301, 924 A.2d 1202 (2007).

Further, the Uniform Firearms Act provides, in relevant part, as follows:

**§ 6106. Firearms not to be carried without a license**

**(a) Offense defined.**—

(1) Except as provided in paragraph (2), any person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree.

\* \* \*

**§ 6107. Prohibited conduct during emergency**

**(a) General rule.**—No person shall carry a firearm upon the public streets or upon any public property during an emergency proclaimed by a State or municipal governmental executive unless that person is:

(1) Actively engaged in a defense of that person's

life or property from peril or threat.

   (2) Licensed to carry firearms under section 6109 (relating to licenses) or is exempt from licensing under section 6106(b) (relating to firearms not to be carried without a license).

* * *

### § 6108.  Carrying firearms on public streets or public property in Philadelphia

No person shall carry a firearm, rifle or shotgun at any time upon the public streets or upon any public property in a city of the first class unless:

   (1)   such person is licensed to carry a firearm; or

   (2)   such person is exempt from licensing under section 6106(b) of this title (relating to firearms not to be carried without a license).

18 Pa.C.S.A. §§ 6106(a)(1), 6107(a), and 6108.

"When contraband is not found on the defendant's person, the Commonwealth must establish constructive possession…." **Commonwealth v. Jones**, 874 A.2d 108, 121 (Pa.Super. 2005).  "We have defined constructive possession as conscious dominion, meaning that the defendant has the power to control the contraband and the intent to exercise that control." **Commonwealth v. Parrish**, 191 A.3d 31, 36 (Pa.Super. 2018), *appeal denied*, 651 Pa. 10, 202 A.3d 42 (2019) (internal quotation marks omitted).  "The intent to exercise conscious dominion can be inferred from the totality of the circumstances." **Jones, supra** at 121.  "Constructive possession may be found in one or more actors where the item in issue is in

an area of joint control and equal access." ***Commonwealth v. Valette***, 531 Pa. 384, 388, 613 A.2d 548, 550 (1992).

> It is well established that, as with any other element of a crime, constructive possession may be proven by circumstantial evidence. In other words, the Commonwealth must establish facts from which the trier of fact can reasonably infer that the defendant exercised dominion and control over the contraband at issue.

***Parrish, supra*** at 36-37 (internal citations and quotation marks omitted).

Instantly, Officer Arch arrived at the scene in response to a burglary call. (***See*** N.T. Preliminary Hearing, 4/8/21, at 6). Upon arrival, the officer observed a Nissan Altima speed through the shopping plaza and hit a curb. (***Id.***) Appellee and her co-defendants exited the Nissan and fled. (***Id.*** at 7). After a brief chase, the officer apprehended Appellee, who subsequently identified herself. (***Id.*** at 7, 10). At the preliminary hearing, Officer Arch made an in-court identification of Appellee and her co-defendants. (***Id.*** at 5).

Regarding the charge of burglary and the related offenses, Officer Arch testified that Appellee and her co-defendants were approximately one hundred yards away from the Snipes store when they began to flee. (***Id.*** at 10). The officer observed that the store's windows and doors were broken. (***Id.*** at 8). Police later recovered "thousands" of dollars' worth of clothes belonging to the Snipes store "in and around" the Nissan. (***Id.*** at 8, 26). Under these circumstances, the Commonwealth established a *prima facie* case for burglary and the related offenses. ***See Wyatt, supra***.

Regarding the conspiracy charge, Appellee and her co-defendants fled

from a vehicle containing stolen merchandise and a firearm. Although the Commonwealth did not present evidence of an explicit agreement between Appellee and her co-defendants, their conduct and circumstances made it reasonable to infer the existence of a shared criminal intent. *See Melvin, supra*. Taken together, these facts established a *prima facie* case for conspiracy. *See Wyatt, supra*.

Regarding the PIC charge, police recovered a firearm from the backseat of the Nissan. (*See* N.T. Preliminary Hearing at 21). Specifically, the firearm was underneath merchandise from the Snipes store. (*Id.*) Since Appellee exited the Nissan from the backseat, it is reasonable to infer that Appellee could have exercised conscious dominion over the firearm. *See Parrish, supra*. Therefore, the Commonwealth established a *prima facie* case for PIC under the theory of constructive possession. *See Wyatt, supra*.

As for the VUFA charges, Officer Arch testified that his interaction with Appellee and her co-defendants occurred during a "riot" in the midst of a COVID-19-related "shut down" in Philadelphia. (*See* N.T. Preliminary Hearing at 12, 14). Detective Campbell added that Appellee did not have a license to carry a firearm. (*Id.* at 22). Like the PIC charge, Appellee's proximity to the firearm made it reasonable to infer that she had the ability to exercise control over the firearm while in the vehicle. *See Parrish, supra*. Based on these facts, the Commonwealth presented sufficient evidence to establish a *prima facie* case for the VUFA charges. *See Wyatt, supra*.

Our review of the testimony produced at the preliminary hearing, viewed in the light most favorable to the Commonwealth, leads us to conclude that the Commonwealth presented sufficient evidence to establish a *prima facie* case as to all charges filed against Appellee. **See Wyatt, supra**; **Ouch, supra**. Accordingly, we reverse the order granting Appellee *habeas corpus* relief, and we remand this case for further proceedings consistent with this decision.

Order reversed. Case remanded. Jurisdiction relinquished.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 7/7/2022*