(No. 19995.- )

THE STEVENS HOTEL COMPANY, Appellant, *vs.* THE CHICAGO YACHT CLUB *et al.* Appellees.

*Opinion filed April 17, 1930—Rehearing denied June 6, 1930.*

GEORGE P. MERRICK, and HUGH T. MARTIN, for appellant.

SIMS, GODMAN & STRANSKY, (FRANKLIN J. STRANSKY, and TIMOTHY I. McKNIGHT, of counsel,) for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

On July 3, 1929, the Stevens Hotel Company, the appellant, filed in the circuit court of Cook county against the Chicago Yacht Club and the South Park Commissioners a bill for an injunction to restrain the defendants from erecting any building or structure to the eastward and in front of the lots of the complainant, fronting 402.22 feet on the west side of Michigan avenue between Seventh and Eighth streets, in the city of Chicago. Separate answers were filed by the defendants, and the cause was heard at the September term, 1929, upon a stipulation of facts and oral and

documentary evidence produced in open court, a decree was rendered finding for the defendants and dismissing the bill for want of equity, and the complainant appealed.

The subject matter of the litigation is the same as was involved in *McCormick* v. *Chicago Yacht Club,* 331 Ill. 514. The complainant is different and its property is different, but the rights claimed and sought to be enforced are the same. The defendants are the same, and the property and rights which they claim and the defense which they make are the same. The appellant's claim to the relief asked is founded upon the same easements appurtenant to its lots as were appurtenant to the lots of the appellants in the *McCormick case* and as are appurtenant to all lots fronting on the west side of Michigan avenue. The history and nature of those easements, their extent and limitations, have been ascertained and recorded in the cases in which they have been the subject matter of litigation which were mentioned in the decision of the *McCormick case.* It would be of no profit to state again what has been already stated several times in the reports of the decisions in the various cases in which those easements have been considered, and therefore reference is made to those cases for a statement of the nature and origin of the easements, what they are and their extent and limitations. The cases are, *City of Chicago* v. *Ward,* 169 Ill. 392, *Bliss* v. *Ward,* 198 id. 104, *Ward* v. *Field Museum,* 241 id. 496, and *South Park Comrs.* v. *Ward & Co.* 248 id. 299, and they presented in somewhat different aspects the question of the effect of the plats of the Fort Dearborn addition to Chicago and of the subdivision of fractional section 15 as a dedication to the public. The first three cases successively decided that the plats (the circumstances under which the lands were disposed of being considered) constituted a dedication of the unsubdivided land lying east of the east line of Michigan avenue from Randolph street on the north to Park Row on the south as an open park, to be kept free from buildings of any character;

that the city had no right to erect or permit the erection of any building upon any part of Lake Front Park without the consent of the abutting property owners; that the park extended east from the east side of Michigan avenue to the waters of the lake; that by the reclamation of the land underlying the shallow waters of the lake adjacent to the park by the park commissioners filling it in with the consent of the State, in which was the legal title to such land, held in trust, however, for the people of the State that they may enjoy the navigation of the waters, carry on commerce over them and have liberty of fishing therein freed from the obstruction or .interference of private parties, the land so reclaimed became a part of the park the same as if it had gradually become attached to the land by the slow process of accretion, and that the park extended to the waters of Lake Michigan; that by such reclamation and the extension of the park eastward the easement of the lots on the west side of Michigan avenue to have the ground between such lots and the lake kept free from buildings was not destroyed but the park as extended between the lots and the lake was subject to the conditions of the original dedication. The fourth case followed the decision of the other three, and further held that the title to the park carried with it riparian rights incident to its location upon the shore of the lake, and that these riparian rights were property rights, which the city of Chicago or the South Park Commissioners held in trust in the same manner as it held title to the park itself, with no power to dispose of them contrary to the trust under which they were held for the people.

Most of the facts were stipulated, and as to those which were not there is no substantial disagreement in the evidence. The appellant is an Illinois corporation, and on January 13, 1925, acquired the title to the real estate described in the bill fronting on Michigan avenue, as has been stated, and afterward erected on it a twenty-five-story hotel building,—the largest hotel building in the world,—being 260 feet

high, containing 3000 rooms for guests, a convention hall capable of seating 4000 people, and an exhibition hall covering an entire floor, containing 35,000 square feet. The cost of the building was many millions of dollars. Michigan avenue between Randolph street and Park Row is an attractive and desirable street for clubs, hotels, shops and other high-class buildings, many of which now occupy it, and Grant Park, which is the name by which Lake Front Park is now known, has been embellished, landscaped and adorned as an open park at great expense. The frontage on Michigan avenue and Grant Park, and the easement prohibiting the erection of any building in the park, constituted perhaps the greatest consideration for the purchase of the site for the hotel, and for that reason the complainant paid a much greater price than would otherwise have been required. The building was designed and constructed so that as large a number of rooms as possible should front on Grant Park and guests occupying the rooms would have an unobstructed view over the park to the lake, and for this reason deep outer courts were left vacant and unoccupied, causing a much greater expense to the complainant than a building constructed on an inner court plan, making rooms fronting on Grant Park more desirable by reason of the view afforded by the outer court plan. More than half the rooms in the building have a view over Lake Michigan. The stipulation of facts refers to the decisions of the various cases in different courts which have marked the history of the title to the park, and sets out at length the ordinances and statutes affecting it which have been passed and the permits and acts of the Secretary of War so far as they affect the case.

On September 22, 1890, the Secretary of War established a harbor line in the lake east of the park, and thereafter the submerged land between the harbor line and the park was filled in and became a part of the park subject to the easement of lot owners. (*Bliss* v. *Ward, supra.*) The

Chicago Yacht Club was originally organized on August 7, 1875, as a voluntary association for the purpose of encouraging sailing, yachting, boating and navigation in Lake Michigan and was organized as a private corporation not for profit on January 9, 1882. It has been in existence continuously and engaged in the purposes for which it was organized since that date. In 1899 the Secretary of War granted to it a permit to fill in a tract of land at the foot of Monroe street east of the harbor line of 1890, and to build a club house, and it built a club house on that tract, which it continuously maintained and used from June, 1902, until June, 1925, when it was moved directly east 366 feet to a corresponding site east of the harbor line established by the Secretary of War on August 9, 1921, where it is now owned, operated and maintained by the club, being the site granted to it by the legislative act of July 11, 1927. When the South Park Commissioners carried out the work of filling in additional submerged lands between Randolph street and Park Row it did not fill in the space entirely to the new harbor line of August 9, 1921, at all points, but constructed sea walls and bulkheads with curved shore lines in the center of the space between Randolph street and Park Row, with corresponding offsets on each side thereof, so that the sea wall and bulkheads present a more beautiful appearance than if they had been built in a straight line along the new harbor line; that on account of the curves in the sea wall and bulkheads the sea wall and bulkheads at the east foot of Monroe street opposite the Yacht Club site are 54.17 feet west of the harbor line of August 9, 1921; that the South Park Commissioners accordingly filled in the space between its bulkhead line and the harbor line which borders the Chicago Yacht Club site on the west so as to enable the Yacht Club and the general public to gain access to the club site, and this space the club afterward filled in 300 feet north and south and 150 feet east and west. The present club house on the site owned by the

Yacht Club and on the site where it is proposed to erect the new club house is approximately three-quarters of a mile from the hotel building of the complainant, in a northeasterly direction, and the proposed club house will not be visible to a person walking along Michigan avenue from any point thereof or any part of the hotel building below the second story. The site on which it is proposed to erect the club house in lieu of the present frame structure is wholly on the easterly side or outside of the harbor line established by the Secretary of War on August 9, 1921, and there is now located substantially along the entire length of the harbor line a permanent sea wall, which marks the eastern extremity of the filled-in land of Grant Park and extends approximately 15 feet below the level of the surface of the water in Lake Michigan at its usual stage and extends approximately five feet above the level of the surface of the water. The surface of the soil and earth in Grant Park contiguous to the sea wall is approximately at the same level as the top of the sea wall but slopes upward to the west, so that the main level of Grant Park west of the sea wall and west of the Chicago Yacht Club's property is approximately 25 feet above the water level. The Chicago Yacht Club's property is only two or three feet above the water level, and approximately 25 feet of the lower part of the proposed new club house will be below the general level of Grant Park. Immediately outside and on the east of the sea wall is the navigable water of the lake, more than 15 feet deep, being a part of the inner harbor basin of the Chicago harbor.

Since the decision in the *McCormick case* the Yacht Club has proceeded with its plans for the erection of a new club house, has become liable for architects' fees in excess of $100,000, has obtained the signatures of more than forty citizens of Chicago to an underwriting agreement for $1,000,000, guaranteeing the payment of that sum to any banks loaning it to the club, and has ordered the execution

of bonds aggregating $1,250,000 and a trust deed of the property involved in this suit to secure the payment of the bonds.

The appellants in the *McCormick case* were owners of lots fronting on the west side of Michigan avenue north of VanBuren street having a twenty-story building thereon leased to tenants, and they filed a bill against the appellees in the present case to enjoin the construction of any building between the east line of Michigan avenue from Randolph street to Park Row and the waters of Lake Michigan, or in the waters of Lake Michigan contiguous to the harbor, and the destruction, impairment or obstruction of the easements appurtenant to the complainants' lots of light, air, passage and view over the land eastward from their premises to the waters of Lake Michigan. The building whose construction was sought to be enjoined was the identical club house sought to be enjoined here, on the identical site here in question, the defendants and their defense were the same and the easements sought to be enforced were the same, for the same easements were appurtenant to every foot of frontage on the west side of Michigan avenue. Only the complainants and their property were different. The statements in the bill in regard to the increased price paid for the complainant's property on account of the existence of the easements and the increased cost of the method of construction adopted by the appellant because of the existence of the easements and the construction of its hotel of 3000 rooms, with outer courts, give the appellant no greater or different rights than those of the appellants in the *Mc-Cormick case* with their twenty-story building leased to tenants, or those of the owner of any other lot, improved or unimproved, on the west side of Michigan avenue between Randolph street and Park Row. Damages occasioned by interference with the easements attached to property on the west side of Michigan avenue are not of a different kind because of the different uses to which the different parcels

of property may be put. Different parcels may be used for an office building, a hotel, a factory, a bank or a mercantile business, but their right to the enjoyment of the privileges secured by the easement appurtenant to them is the same. One may be affected more or less than another by differences of location or use, or perhaps other circumstances, but such differences are of degree, only, and not of kind, and do not affect the right of any owner of property to which an easement is attached, to recover such damages as he has sustained by reason of interference with the easement, or to enjoin such interference or the use of the park for purposes contrary to the terms of the trust under which the dedication was accepted. Neither did the Yacht Club gain any additional rights by incurring liabilities and proceeding with plans for the financing of its proposed building. If the erection of the club house as proposed would infringe upon the easement of the lot owners on the west side of Michigan avenue, the incurring of expense, great or small, by the Yacht Club in the construction of the proposed building could have no effect on the appellant's right to prevent its construction, and if the erection of the proposed club house will not infringe on the easement attached to the lots on the west side of Michigan avenue the appellant has no right to enjoin its construction. We held in the *McCormick case* that the club house would not infringe upon these easements, for the reason that the easements did not burden the land on which the club house was to be erected.

The appellant in its reply brief says that it is not, in so many words, asking that the *McCormick case* be overruled, but, in fact, the appellant cannot succeed unless the *McCormick case* is overruled. It is stated in its brief that the court in the *McCormick case* overlooked part of the history of the title to the dedicated lands and wrongfully held that the grant to the Yacht Club was a grant of land outside of the dedicated land now called Grant Park, and that the opinion stated that McCormick, as an abutting property owner

on Michigan avenue, neither alleged nor proved any special injury to himself and for that reason could not maintain his bill. The distinction between this case and the *McCormick case,* it is said, is, that in this case, by the pleadings and proofs, respectively, it is shown that the present harbor line marked by a sea wall is not the eastern limit or boundary of Grant Park or the dedicated lands, but that the eastern limit of Grant Park or the dedicated land is a "varying, receding or vanishing line and extends to the waters of Lake Michigan to whatever point the waters may recede when filled in by natural or artificial means." It is also said the questions involved are: "Is the granted site to the Yacht Club a part of Grant Park or is it outside and east thereof, legally speaking, and has complainant by virtue of its ownership of lots abutting Michigan avenue and Grant Park an easement thereover to the waters of Lake Michigan?" and the further question of fact whether the appellant's property was of higher value because of its location and the easement appurtenant to it. This latter, however, is not a disputed question but must manifestly be answered in the affirmative. The answer to the other questions depends on the construction of the decisions in the three earlier Lake Front cases. The later decisions have merely applied the principles established in those cases.

The park stopped at the shore. The title to the land beyond the shore underlying the waters of the lake was in the State in trust for the people, for their use for the purposes of navigation, commerce and fishing. It was subject to no easement but was subject to the trust for the use of the people. The riparian rights were appurtenant to the title to the park. The lot owners west of Michigan avenue were not riparian owners and had no riparian rights except as a part of the general public, who were the beneficiaries of the trust under which the park was held for the benefit of the public. If the erection of a building in the navigable waters of the lake beyond the park was unlawful, it was

still not a violation of the rights appurtenant to the lots of the appellant and all other owners on the west side of Michigan avenue.

Counsel for the appellant in their brief say that in the *McCormick case* it was admitted by stipulation that the granted site is entirely outside the park while it is not so admitted in the present case; that in that case it is said no damage peculiar to the appellants was alleged different from that of any members of the public, while in the present case it is alleged and proved that the building of the proposed club house will interfere to at least a small degree with the appellant's easement of view and access. Whether it was admitted or not in the *McCormick case* that the club house site was entirely outside the park, it is admitted in this case that the site is wholly on the easterly side or outside of the harbor line established by the Secretary of War on August 9, 1921, and there is now located substantially along the entire length of the harbor line a permanent sea wall, which marks the eastern extremity of the filled-in land of Grant Park, and that immediately outside and on the east of the sea wall is the navigable water, more than fifteen feet in depth, of the inner harbor basin of the Chicago harbor.

The appellant argues that the east boundary of the park is not the harbor line fixed by the Secretary of War but is a varying, receding or vanishing line, and extends to the waters of Lake Michigan to whatever point the waters may recede when filled in by natural or artificial means. The decree of the circuit court of Cook county which was affirmed in *Bliss* v. *Ward, supra,* enjoined the erection of any building on the tract of land between Randolph street and Park Row, bounded on the west by Michigan avenue and on the east by the line established at the date of the decree or by any line thereafter established by the government of the United States as a harbor or dock line, said harbor line then established being the harbor line established

by the Secretary of War September 22, 1890. This decree established the east line of the park, which remained the east line until the new harbor line was established 366 feet east of the previous line on August 9, 1921, when the boundary of the park was also extended 366 feet east, the intervening space was filled up and the sea wall was built, on one side of which were the navigable waters of the lake fifteen feet deep and on the other the park. The receding or vanishing line to which the waters of the lake may in the future recede is not the boundary adjudged by the court. That boundary is the harbor line established by the United States, and it is a relatively fixed line. As mentioned in the decree, it was a fixed line definitely established by the Secretary of War, beyond which neither the park nor the easements of the lot owners on the west side of Michigan avenue reached. When the park reached the sea wall it had arrived at the waters of Lake Michigan, and whatever rights the lot owners abutting on the park had by reason of their being abutting owners did not extend further. The boundary of land bordering upon a lake at any particular time is the water's edge, and there is no basis in this case for the claim of the appellant to an easement extending beyond the sea wall. Its claim that "the site for the club house is immediately physically attached or annexed to Grant Park, and a part of it physically, and so, by operation of law, legally," is unfounded. The site is annexed to the park only in the sense that the two have a common boundary. They are attached only in the sense that any two adjacent tracts are attached.

From the conclusions which we have stated it follows that, as in the *McCormick case,* the appellant cannot maintain its bill as an abutting owner because none of its privileges as an abutting owner has been interfered with. It is not a riparian owner and claims no rights as such an owner. The title to the park, and the riparian rights by reason of such ownership, are held in trust for the public, and the

474

unlawful or improper use of property so held can be enjoined by private individuals only where they have sustained special injury by reason of such wrongful use. All the questions presented in this record were considered, and in our judgment properly decided, in *McCormick* v. *Chicago Yacht Club, supra.*

Since the complainant has no interest either as an abutting land owner or as one of the public to enable it to maintain its bill, the constitutional questions sought to be presented cannot be considered.

The decree is affirmed.

*Decree affirmed.*