Colton et al. *v.* Hanchett et al.

---

Salmon C. Colton et al., Plaintiffs in Error, *v.* James H. Hanchett et al., Defendants in Error.

### ERROR TO OGLE.

The act to provide for township organization does not give the board of supervisors authority to appropriate the county funds in aid of the construction of toll-bridges, or to aid a private individual in the construction of a free bridge; nor does the securing to the county a right of way for county officers, grand and petit jurors, and witnesses in criminal cases alter the powers of the supervisors.

The law fixes the compensation and defines the privileges and immunities of county officers, and they have no right, by the use of county funds, to secure to themselves or to any other particular class of individuals, immunities not granted by the statute.

A bill to enjoin the board of supervisors from misapplying the money of the county, is a proper remedy.

The facts of this case are sufficiently stated in the opinion of the court.

The *pro formâ* decree upon the agreement of the parties was entered at March term, 1852, of the Ogle Circuit Court, Wilkinson, Judge, presiding.

J. Marsh and T. L. Dickey, for plaintiffs in error.

E. S. Leland, for defendants in error.

Trumbull, J. The complainants, who were tax-payers of

Ogle county, filed a bill in chancery to enjoin the board of supervisors of said county from granting to James H. Hanchett, one of the defendants, the sum of one thousand dollars, to aid him in the construction of a toll-bridge across Rock River, at Oregon city, in said county.

Hanchett had been authorized to build the bridge by a special act of the General Assembly, enacted February 17, 1851; and the board of supervisors of Ogle county, by an order passed January 28, 1852, resolved that, on the completion of said bridge by Hanchett, an order should be drawn on the treasurer of said county, in his favor, for the sum of one thousand dollars. Provided, that the order was not to be issued till Hanchett should execute to the county a good and sufficient right of way across said bridge for all the officers of said county, while employed on the business of the county, for all grand and petit jurors, and all witnesses attending criminal trials, to continue for the term of twenty years.

The case was heard on bill and answer, and a *pro formâ* decree entered dismissing the bill. By a stipulation between the parties, two questions only are submitted to this court for adjudication. " First, the right of the defendants to issue the order, for the purpose specified in the bill and answer; and, secondly, whether the complainants have sought the proper remedy."

The act to provide for township organization, approved February 17, 1851, art. 15, § 2, declares as follows: " No county, under this organization, shall possess or exercise any corporate powers except such as are enumerated in this act, or shall be specially given by law, or shall be necessary to the exercise of the powers so enumerated or given."

Under this provision of the statute, which is merely declaratory of what the law was before, it is manifest that the board of supervisors had no authority to appropriate the county funds to aid a private individual in the construction of a toll-bridge, or for any other purpose, unless it was given by the general law providing for township organization, or was necessary to the exercise of some power therein enumerated, for it is not pretended that there is any special statute conferring the power.

The township law will be searched in vain for any provision specially authorizing the board of supervisors to appropriate county funds in aid of the construction of toll-bridges. The only part of the act which can afford a pretext for the exercise of such a power is the fourth clause of the fourth section of art. 16, which authorizes the board of supervisors " to appropriate funds to aid in the construction of roads and bridges, in any part of their respective counties, whenever a majority of the whole board of the county may deem it proper and expedient."

The meaning of this general provision is to be ascertained by reference to the other provisions of the act, upon the principle that, in the construction of a statute, the whole act is to be taken together; and indeed all statutes upon the same subject are to be construed in reference to each other.

By article 22, the care and superintendence of highways and bridges are conferred on the commissioners of highways in the respective towns; but such commissioners have no more authority under this law to erect toll-bridges, than they have to put up gates, and charge toll on any of the ordinary highways of the county, which it will not be pretended that they have authority to do.

The roads and bridges, in aid of the construction of which the board of supervisors is authorized to.appropriate funds, must be understood to be such roads and bridges as the act authorizes to be built; that is, free roads and free bridges, the jurisdiction over which is given to the towns through their commissioners of highways. The board of supervisors would have no authority to appropriate county funds to aid a private individual in the construction of even a free bridge; much less have they authority to donate a sum of money to aid him in the building of a bridge for his own private advantage.

The circumstance, that the money was not to be paid Hanchett till he secured to the county a right of way for county officers, grand and petit jurors, and witnesses in criminal cases, does not alter the case. The law fixes the compensation, and defines the privileges and immunities of county officers; and they have no right, by the use of county funds, to secure to

52 *

themselves, or for any other particular class of individuals, immunities not granted by the statute.

The other question involved in the case relates to the remedy which the complainants have chosen.

It was not in their power to take appeal from the order of the board of supervisors, for the statute has not made provision for appeals in such cases.

They could not resist the payment of their taxes upon the ground that the board of supervisors were about to misapply part of the county revenue; for the whole revenue would be collected together, and it would be impracticable to determine how much of the tax assessed against each individual was on account of the illegal application of part of the county funds. It has been suggested, that an action on the case would have lain against the supervisors, or that there was a complete remedy by the common-law writ of *certiorari.* It is possible that partial redress, at least might have been obtained in either of the ways indicated; but to have resorted to one of them would have led to a multiplicity of suits; and the other, if available at all, would most likely have been less prompt and efficacious than that which was adopted. No objection was taken to the jurisdiction in the answer; and, as the right to appropriate the funds of the county in the manner proposed was a question affecting the public interest, the remedy by bill, to enjoin the board of supervisors from misapplying the money of the county, was the most direct, speedy, and efficacious which could have been adopted, and we see no objection to chancery entertaining jurisdiction of such a bill.

The decree of the Circuit Court is reversed and the cause remanded.

*Decree reversed.*

CATON, J., dissented.