# ROBERTS v. BROOKS.

(Circuit Court of Appeals, Second Circuit. January 7, 1897.)

1. CONSTITUTIONAL LAW—TITLES OF ACTS.

The legislature of New Jersey, in 1861, by an act entitled "An act to authorize the construction of a dock or wharf on Toms River," authorized H. & D. to "erect and maintain" a dock or wharf in front of their lands on Toms river, to collect wharfage for the use thereof, and to hold and enjoy the same, to themselves, their heirs and assigns. Held, that the object of the act was sufficiently expressed in its title, under article 4, § 7, cl. 4, of the constitution of New Jersey.

2. LEGISLATIVE GRANTS—TRANSFER OF TITLE—WHARVES.

Held, further, that it was unnecessary that such legislative grant should be supplemented by a formal instrument under the seal of the state, in order to convey title.

3. SAME—ADVERSE POSSESSION.

Held, further, that the fact that when the act was passed the title to the upland was in H. alone, and not in H. and D., could not affect the title of a grantee from H. and D. after 35 years' possession of the wharf by them and their heirs and assigns.

**4. SAME—PRIVATE AND PUBLIC WHARVES.**
> *Held,* further, that the words of the act were sufficient, under the law of New Jersey, to convey a fee in the wharf to the grantees, and the wharf did not become a public wharf, subject to the use of the public on payment of wharfage. O'Neill v. Annett, 27 N. J. Law, 290, followed.

**5. SAME—CERTAINTY OF GRANT.**
> *Held,* further, that the grant was not void for uncertainty, exactness of location having been supplied when the dock was built.

**6. SAME—ACCRETIONS.**
> *Held,* further, that, absolute ownership of the dock and the shore being shown, a small piece of land, formed by accretion, in the angle between the dock and the shore, belonged to the shore owners. 71 Fed. 914, affirmed.

Appeal from the Circuit Court of the United States for the Southern District of New York.

This is an appeal from a decree of the circuit court, Southern district of New York, which directed the specific performance by the defendant of a contract between the parties for the sale and purchase of a tract of land, comprising about 15 acres, situate at Toms River, Ocean county, in the state of New Jersey. The making of the contract, and refusal by defendant to perform it, are admitted. The answer denies that complainant is seised in fee of the premises, or, rather, of certain substantial parts thereof, and avers that she is unable to give a good title thereto. The opinion of the circuit court is reported in 71 Fed. 914, and may be consulted for a full statement of the case. Some of the points urged upon that court, and decided adversely to defendant, have not been argued here, and will not be discussed in this opinion.

Henry E. Parsons, for appellant.

Enos N. Taft, for appellee.

Before LACOMBE and SHIPMAN, Circuit Judges.

LACOMBE, Circuit Judge. A substantial part of the property bought by defendant is known as the "Dock Lot." It contains $^{50}/_{100}$ of an acre, more or less, and is described by metes and bounds in the contract of sale. The evidence shows this lot to be partly original shore and partly made land, a dock of solid filling having been built out from the shore. No objection is raised to the title to so much of this plot as was originally natural shore, except that it is claimed to be subject to a right of way. It is insisted, however, that complainant has no title "in fee simple, free from all incumbrance," to the made land. The original source of title to this made land is found in an act of the legislature of the state of New Jersey passed February 28, 1861, entitled "An act to authorize the construction of a dock or wharf on Toms river, in the county of Ocean," and which provides as follows:

"Section 1. Be it enacted by the senate and general assembly of the state of New Jersey. That John B. Horton and Charles L. Davis be and they are hereby authorized and empowered to erect and maintain a dock or wharf in front of their lands on Toms river in the township of Dover, Ocean county, said dock or wharf to be built six hundred feet or more, at the option of the proprietors, along the channel of said river, and extending inland twenty-five rods, or as far as may be necessary for the improvement of the property of said proprietors or the benefit of commerce.

"Sec. 2. And be it enacted, that said John B. Horton and Charles L. Davis may be and they are hereby authorized and empowered to collect wharfage for the use of said dock or wharf, and shall be entitled to all the benefits accruing from the same, and to hold and enjoy the same to themselves, their heirs and assigns; pro-

vided however, that no such dock or wharf shall be constructed on said river by virtue of this act as may interfere with or obstruct the navigation of said river.

"Sec. 3. And be it enacted that this act shall take effect immediately.

"Approved Feby. 28, 1861."

Conceding that the title to the land under water was in the state of New Jersey, defendant contends that this act was ineffectual to convey the fee, for various reasons, which will be separately considered.

1. The constitution of the state of New Jersey (article 4, § 7, cl. 4), in force when the grant was made, provides that every law shall embrace but one object, and that shall be expressed in the title. Manifestly, the act is not obnoxious to this provision. The sole object of the act is to authorize the construction of the dock, and that object is expressed in the title. That object is accomplished by granting to the individuals the authority and power to erect and maintain the dock; to collect wharfage for its use, with title to all the benefits accruing from such structure; to hold and enjoy the same, to themselves, their heirs, and assigns. What sort of a title, under the laws of New Jersey, this form of words gives to the grantees, who are thus authorized to erect and maintain the dock, and to hold and enjoy, to themselves, their heirs and assigns, all the benefits accruing from such erection and maintenance, is a different question. Whether docks constructed by private persons under authority by the state shall be temporary or permanent structures is a question of state policy. If such construction gives to the grantee under the law of the state a permanent right to the exclusive enjoyment of the dock thus built, with absolute dominion over it, the title of an act which indicates the intention of the legislature to give to some one the right to build such a structure sufficiently expresses the object of the act.

2. The objection that the legislative grant was not supplemented by a formal instrument bearing the seal of the state, etc., is frivolous. See Rutherford v. Greene's Heirs, 2 Wheat. 196.

3. It is next objected that the grantees, Horton and Davis, are by the act authorized and empowered to erect and maintain the dock in front of *their* lands on Toms river, whereas the records show that at the time the act was passed the fee of the upland was in Horton alone. Whether Davis then had or had not any interest in the upland does not appear. The dock was built by the grantees, and subsequently Horton conveyed the fee of the upland to Davis, and the grantees, their heirs and assigns, have held and enjoyed the dock for 35 years. It is difficult to see upon what principle, in view of the presumptions thus arising, it can be contended that the act of the legislature was inoperative, and the title of the grantees defective. This objection seems not to be included in the assignment of errors.

4. It is next objected that the language of the act does not convey a fee; that the dock or wharf erected under it became a public dock or wharf, which the public would have the right to use upon the payment of wharfage. There might be much force in this objection, were it not that the property in question is located in

the state of New Jersey. What form of words shall be sufficient, either between private parties or between the state and individuals, to convey a fee simple absolute of real estate, is a matter of local law, where the federal courts will follow the rulings of the state tribunals. In the case of O'Neill v. Annett, 27 N. J. Law, 290, it appeared that defendant, who owned a piece of upland on the Hudson river, had built two wharves in front of the property, extending out into the river about thirty feet below. low-water mark. This he did without any grant or permit, but subsequently, in 1844, the legislature passed an act declaring "that it shall and may be lawful for the said Robert Annett, his heirs and assigns, to keep up and maintain his said wharves   *   *   *   in the same manner as fully to all intents and purposes as if an act of the legislature had been first passed authorizing and making it lawful for him or them to build and erect the same." The act, in similar language, authorized the extension of said wharves, and the building and erection of others in front of the said upland, provided such wharves "shall not obstruct the navigation of said river." It further provided that it "shall and may be lawful for said Annett his heirs and assigns to demand receive and collect compensation from any person or persons using said wharves for any purpose whatever." It will be observed that the phraseology of this act is substantially the same as that of the one now under consideration. A subsequent statute made it unlawful for the owner or captain of any steamboat to land, etc., at Annett's wharf, after notification not to do so. The plaintiff owned a vessel,—apparently not a steamboat,—and had been refused permission to discharge a cargo of coal at the wharf. There being no evidence of a dedication of the wharf to the public, the court of errors held that, upon the facts above set forth, the plaintiff should be nonsuited. The following excerpt from the opinion seems controlling of the question raised here by appellant's objection:

"The right to the exclusive use of the wharf by an individual cannot depend upon the question whether the wharf is constructed above or below low-water mark, or whether the shore is or is not publici juris, but solely upon the question whether, in fact and in law, the title to the wharf is vested in the individual, no matter how that title may have been acquired. By the common law of this state, wharves erected by the shore owner below tide, and within the limits of the jus publicum, vest in the shore owner. It was so held by all the court in Gough v. Bell, 22 N. J. Law, 441. The judges, it is true, differed as to the foundation and nature of the right of the shore owner, but all agreed that when the land was reclaimed, or the wharf erected, by the tacit or express consent of the legislature, it became private property, and divested of its public character. And *the owner has the same absolute dominion over it, the same absolute right of enjoyment in it, that he has in and over other private property.*"

Appellant, in his supplemental brief, reiterates the assertion that in O'Neill v. Annett, 27 N. J. Law, 290, the words "private property" were used simply to distinguish dock property held by private persons from public property, which was untaxable, and that O'Neill v. Annett "in no way determined that such docks are not public docks that may be used by the public on paying dockage." Inasmuch as the single issue in O'Neill v. Annett was whether the owner of a coal barge was entitled to land and discharge cargo at

the dock on paying dockage, it is difficult to explain the assertion in the brief.

5. The objection that the grant was void for uncertainty is without merit. The circuit court correctly held that exactness of location was supplied when the dock was built.

6. Absolute ownership of the dock and the contiguous shore being shown, the small piece of land which has formed by accretion in the angle made by the easterly line of the dock and the shore line of the large parcel goes with the land to which it has accrued.

Appellant further objected to the title on the ground that part of the property was incumbered by an easement in the form of a right of way. The circuit court held that the evidence showed the right of way to be outside of the premises. Why appellant, in the face of this evidence, still insists on this objection, it is difficult to understand. It is not easy, without a map, to indicate the situation, but the following description may be sufficient: The original shore line of high-water mark runs about east and west, and the made wharf projects therefrom southerly into the river about 150 feet. About 50 feet to the north of this original shore line is Water street, laid out 30 feet wide, and running parallel to the shore from the westward until it meets Dock street. Dock street runs northerly inland from Water street. It is laid out 40 feet wide, and, if prolonged southerly from Water street, it would strike the original line of high-water mark a little westerly of the eastern line of the wharf. Originally Horton owned all the land on both sides of Water street, and on both sides of Dock street. He conveyed by a deed (undated in the record here, but which counsel agree should be dated October 4, 1867) to one Hadley a plot of about $8\frac{1}{4}$ acres, lying west of the middle line of Dock street, and north of the middle line of Water street. It contains the reservation of a right of way as follows:

"Reserving to ourselves, our heirs," etc., "in common with said Hadley, his heirs," etc., "a right of way twenty feet in width to and from the dock, on the eastern side of said lot [herein conveyed]. Also reserving another right in common as aforesaid fifteen feet in width across the dock on the south side thereof."

It is unnecessary to quote the language of the contract in suit. Suffice it to say that, in warranting the title to be free from incumbrances, it excepts "the easement of Dock street."

Appellant seems to have formed the impression that the language in the deed to Hadley created some right of way beyond the southerly end of Dock street across the 50-foot strip of original shore lying south of Dock street. The only apparent ground for this contention is that the reservation uses the words "to and from the dock." A careful examination of the deed itself, however, shows that the word "dock" was used, as covering the entire completed wharf, which, of course, was part original bank and part filled-in land. This would be a most natural use of the word after the dock was built, and it was built years before. That it was used in this sense in the Hadley deed is apparent from the description. The second course runs along the middle of Dock street to a stone, which the distance given shows must have been in Wa-

ter street. The third course is given from this stone N., 83° W., which is the course of Water street, "to a stake." Manifestly, this stake must be in Water street, but it is described as "a stake in said dock line." Moreover, the second right of way of 15 feet on the south side of the lot conveyed is proved by the description to be the northerly half of Water street, but it is described as "fifteen feet in width *across the dock.*" It may be added that the contract in suit uses the word "dock" in the same sense, for the plot set out by metes and bounds—its northerly boundary being given as "along Hadley's southerly line," which, as we have seen, is in the middle of Water street—is described as being "a part of what is known as 'Horton's Coal Dock.'" Finally,—and no further answer to appellant's point is needed,—the right of way in the Hadley deed is one reserved out of the premises conveyed to him. There is no grant or reservation of anything in the property not conveyed by the grantor.

There is nothing to add to the opinion of the circuit court as to the sufficiency of the deed of John and Mary Falkinburgh (husband and wife) to convey the title to property, the fee of which belonged to the wife. The brief asserts that "by the laws of New Jersey it did not operate to convey the wife's interest," but neither statute, authority, nor argument is presented to support this assertion. The indenture which is executed by both John and Mary recites that it is made "between John Falkinburgh and Mary, his wife, of the village of Toms River," etc., "of the first part, and Charles L. Davis," etc., "of the second part," and proceeds as follows: "Witnesseth, that the said party of the first part, for and in consideration of one thousand dollars, lawful money of the United States, to them in hand well and truly paid by the said party of the second part at or before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, and the party of the first part therewith fully satisfied, contented, and paid, hath given, granted, bargained, sold," etc., "and by these presents do give, grant, bargain, sell," etc., "to the said party of the second part, and to his heirs and assigns forever," the land therein described. The covenants are made by John Falkinburgh alone. More than a century and a half ago the colony of New Jersey expressly provided by statute that "all deeds or conveyances made or to be made by a man and his wife of the estate of the wife [when properly acknowledged] shall be good and sufficient to convey the lands, estate or rights thereby intended to be conveyed." 22 Geo. II. (A. D. 1743) c. 87, § 3. As the defendant refers to no later statute or decision in any way qualifying this plain and explicit provision, his objection is frivolous.

As to the alleged defects in the title to so much of the premises as were the subject of the foreclosure suit of McKean v. Horton, and of the subsequent suit to quiet the title brought by Sophia H. Davis against the widow, children, and next of kin of Horton, we deem it unnecessary to add anything to the opinion of the circuit court. The objection is unsound. The decree appealed from is affirmed, with costs.