(No. 18989.—

ROBERT H. McCORMICK *et al.* Appellants, *vs.* THE CHICAGO YACHT CLUB *et al.* Appellees.

*Opinion filed October 25, 1928.*

WILSON, MCILVAINE, HALE & TEMPLETON, (WILLIAM B. HALE, and CALVIN F. SELFRIDGE, of counsel,) for appellants.

SIMS, WELCH, GODMAN & STRANSKY, (FRANKLIN J. STRANSKY, and TIMOTHY I. MCKNIGHT, of counsel,) for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

The appellants, Robert H. McCormick, individually and as trustee, and others, are the owners of lots in the city of Chicago fronting on the west side of Michigan avenue and adjacent to the north side of VanBuren street, improved with a twenty-story building leased to tenants, and being a part of fractional section 15, town 39 north, range 14 east of the third principal meridian, and situated between Randolph street and Park Row. They filed a bill in the superior court of Cook county against the Chicago Yacht Club to

restrain it from constructing any building between the east line of Michigan avenue, from Randolph street to Park Row, and the waters of Lake Michigan, or in the waters of Lake Michigan contiguous to the harbor line of August 9, 1921, and from destroying, impairing or obstructing the easements claimed by the complainants of light, air, passage and view over the land eastward from their premises to the waters of Lake Michigan. The bill was amended making the South Park Commissioners also a defendant, and the defendants filed separate answers. The yacht club also filed a cross-bill praying for a decree establishing its title to the premises on which it proposes to construct a new club house and its right to erect thereon a new club house building, wharves and docks, and perpetually enjoining the complainants from commencing any other suit against the cross-complainant involving the claims alleged by the complainants in their bill. The cross-bill was answered, issues were joined, the cause was heard upon the pleadings and a stipulation of facts, and a decree was rendered dismissing the original bill for want of equity, granting the relief prayed in the cross-bill and adjudging the costs against the complainants, from which the complainants have appealed to this court, a freehold (the perpetual easements claimed by the complainants) being involved.

The lots of the appellants, being a part of fractional section 15 and fronting on the west side of Michigan avenue, have appurtenant to them the same easements appurtenant to other lots similarly situated which were the subject matter of the litigation in the so-called Lake Front cases. (*City of Chicago* v. *Ward,* 169 Ill. 392, *Bliss* v. *Ward,* 198 id. 104, *Ward* v. *Field Museum,* 241 id. 496, and *South Park Comrs.* v. *Ward & Co.* 248 id. 299.) The nature and extent of the easements in question were considered in those cases. The history of the title to the Lake Front Park and the circumstances of the making and recording of the government plat of the Fort Dearborn addition to the town

of Chicago and the subdivision and plat of fractional section 15 by the canal commissioners of the State of Illinois, which vested the title to the park in the city of Chicago and created the easements in the park which were litigated in the cases cited and are involved in this case, are set forth in those cases. So far as essential to an understanding of this case that history is summarized in the opinion of Mr. Justice Cartwright in *Ward* v. *Field Museum, supra,* and without repeating it we refer to that opinion for a statement of the facts up to the time that case arose. Statements in greater detail are found in *City of Chicago* v. *Ward, supra,* and *Illinois Central Railroad Co.* v. *Illinois,* 146 U. S. 387, the latter a case which did not involve the easements in question but did involve the title of the State and the city to the park and the adjacent land underneath the navigable waters of the lake. The case of *South Park Comrs.* v. *Ward & Co. supra,* following the three previous cases, reiterated their decision that by the plats of the Fort Dearborn addition to Chicago and of the subdivision of fractional section 15 the Lake Front Park was dedicated to the public as an open park, to be kept free from buildings, and that the city had no right to erect or permit the erection of any building upon any part of Lake Front Park without the consent of the abutting property owners, and, going still further, held that the easements of the owners of lots fronting on the west side of Michigan avenue could not be condemned by the exercise of the power of eminent domain and the legislature had no power to authorize their condemnation. It was further held that the park extended to the waters of Lake Michigan, that the title thereto carried with it riparian rights incident to its location upon the banks of the lake, and that these riparian rights were property rights which the city of Chicago held in trust in the same manner as it held title to the park itself, with no power to dispose of them contrary to the trust under which they are held for the people.

On September 22, 1890, the Secretary of War established a harbor line in the lake east of the park, and thereafter the submerged land between the harbor line and the park was filled in and became a part of the park, subject to the easements of lot owners. (*Bliss* v. *Ward, supra.*) The Chicago Yacht Club was originally organized on August 7, 1875, as a voluntary association for the purpose of encouraging sailing, yachting, boating and navigation in Lake Michigan, and was organized as a private corporation not for profit on January 9, 1882. It has been in existence continuously and engaged in the purposes for which it was organized since that date. In 1899 the Secretary of War granted to it a permit to fill in a tract of land at the foot of Monroe street east of the harbor line of 1890 and build a club house there, and it built a club house on that tract which it occupied until 1925. It is a three-story frame building about sixty feet in height. On August 9, 1921, the Secretary of War established a new harbor line, which is 366 feet east of the harbor line of 1890 and about 2226 feet east of the west line of Michigan avenue. Pursuant to the request of the South Park Commissioners the yacht club obtained a permit to fill in an area 300 feet north and south and 150 feet east and west, the western boundary of the tract being the new harbor line, and to maintain thereon a club house, and in 1925 the club house constructed in 1902 was moved to this location, where it has since remained. The South Park Commissioners were given permission by the Secretary of War to fill in the submerged land between the old and the new harbor lines, and they have built a curved sea wall substantially along the new harbor line which extends fifteen feet below and five feet above the surface of the water, and the submerged land between the sea wall and the old harbor line has been filled in and become a part of the park, subject to the easements of abutting lot owners.

The stipulation on which the cause was heard recites the following facts:

*"Twenty-fifth*—The Chicago Yacht Club has continuously since its organization been engaged in promoting the art and science of navigation, of educating seamen, in maintaining private docks and landing places, and in providing facilities for conducting water sports for the free use of the public. It now provides, and has continuously provided and will hereafter provide, free wharfage and other facilities for the United States Naval Reserve. During the late World War it furnished free nautical training for more than 4000 sailors. It also provided facilities for the training of the Boy Scouts of America, and has provided and maintained space to the general public to view naval exhibitions and boat races, and has provided free facilities for the owners of water craft in other smaller clubs and yacht races for the entertainment of the general public. The proposed new club house, wharves and landing places and the yachts and other water craft will be things of beauty and wholly consistent with the use of Grant Park for park purposes. Said activities have been of a public character.

*"Twenty-sixth*—On July 11, 1927, the legislature of Illinois passed an act reciting in its preamble that said yacht club had been engaged in the above mentioned activities, of benefit to the people of the State, and granting to the yacht club the premises on which their old club house now stands, being 300 feet north and south and 150 feet east and west, at the foot of Monroe street, just east of and adjoining the harbor line of 1921, subject to the condition that said club shall, in addition to club activities, continue to be engaged in the activities of benefit to the public enumerated in the act; that upon said club abandoning such activities said premises shall revert to the State of Illinois, and that the State may at any time acquire said premises, and all improvements thereon, upon paying to said club a sum equal to eighty per cent of the then value of any improvements

on said premises. The act further provides that no buildings shall be built on the premises unless the South Park Commissioners approve their plans.

"*Twenty-seventh*— * * * The wharves of the club house proposed to be erected would afford the only present means whereby vessels and other craft may safely land passengers along the lake front. These wharves will assist the people of the State to enjoy their right to use the waters for fishing, hunting, boating and the like. The location for the club house is within the inner harbor basin and has never been a geographical part of Grant Park. The South Park Commissioners have never assumed or attempted to control the site for the new club house building. The plans for the new club house have been submitted to and approved by the South Park Commissioners.

"*Twenty-eighth*—The South Park Commissioners did not fill in entirely up to the new harbor line of 1921 but constructed curved sea walls. At the east foot of Monroe street the sea wall is 54.17 feet west of said harbor line of 1921. The South Park Commissioners filled in said space between its bulkheads and the harbor line, which borders the Chicago Yacht Club property, so as to enable the Chicago Yacht Club members and the general public to gain access to the club property."

The construction of the club house will not be a violation of the rights of the abutting lot owners adjudicated in the Lake Front cases which have been cited. The site on which it is to be erected is entirely outside the park, but the appellants contend that their easement includes the right to an unobstructed view of the lake and of unobstructed access to it. The privilege granted by the dedication of the park to the abutting lot owners was that the public ground dedicated for the park should forever remain vacant of buildings, and the building proposed to be constructed outside the park will not violate that provision. The appellants' rights as abutting lot owners will not be disturbed

by its erection. The appellants, as abutting owners, have no riparian rights. The shore owner has the right of access from his land to the lake—the right to pass to and from the waters of the lake within the width of his premises as they border on the lake. (*Revell* v. *People,* 177 Ill. 468.) The appellants have no land bordering on the lake and have no right of access to the lake from their land. The right of view over the waters of the lake can be no greater than the right of access. The title to the park, whether in the city or the South Park Commissioners, together with the riparian rights existing by virtue of such ownership, is held in trust for the use of the public. The obstruction or misuse of property so held can be enjoined by individuals only where a special injury is caused by such obstruction or misuse to the persons complaining. The individual has no standing in equity on account of public injury. He can invoke that jurisdiction only to protect his property from threatened injury, and since the property owner has a complete remedy at law for any injury to his property, a court of equity will not, upon the allegation that the supposed authority for the construction complained of is illegal, enjoin the defendant from proceeding. The misuse of public property which does not result in special injury to the individual cannot be complained of except by the people. A private individual cannot maintain a bill to enjoin a breach of public trust, in the absence of statutory authority, without showing that he will be specially injured thereby. *City of Chicago* v. *Union Building Ass'n,* 102 Ill. 379; *Doane* v. *Lake Street Elevated Railroad Co.* 165 id. 510; *General Electric Railway Co.* v. *Chicago and Western Indiana Railroad Co.* 184 id. 588; *Hamilton* v. *Semet Solvay Co.* 227 id. 501; *Hill* v. *St. Louis and Northeastern Railway Co.* 243 id. 344; *McPike* v. *Illinois Terminal Railroad Co.* 305 id. 298; *Hartshorn* v. *Bierbom,* 312 id. 275.

The ownership of the soil covered by the waters of the lake outside of the boundary of the park and sovereignty

and dominion over them, subject to the power of Congress to control their navigation so far as necessary for the regulation of commerce with foreign nations and among the States, are vested in the State in trust for the public. (*Illinois Central Railroad Co.* v. *Illinois,* 146 U. S. 387.) The bill shows no damage peculiar to the appellants different from that to any other members of the public which will arise from the construction of the club house. It cannot be maintained by the appellants as abutting owners because no interference with their rights as abutting owners is shown, and it cannot be maintained by them as members of the general public because no injury to them other than that which is common to all the public is shown. For such an injury redress must be sought by the city, the Attorney General or the State's attorney.

So far as the decree found that the claims of the complainants constitute a cloud on the title of the Chicago Yacht Club and quieted and confirmed the title of the latter against such claims and enjoined the complainants from maintaining any other suit or proceeding against the Chicago Yacht Club involving the same claims it is erroneous. A bill will not lie to remove a mere verbal claim or oral assertion of ownership in property as a cloud upon the title. Such clouds upon title as may be removed by courts of equity are instruments or other proceedings in writing which appear upon the records and thereby cast doubt upon the validity of the record title. *Parker* v. *Shannon,* 121 Ill. 452; *McCarty* v. *McCarty,* 275 id. 573; *Greenough* v. *Greenough,* 284 id. 416.

The decree dismissing the amended bill is affirmed and the decree granting relief on the cross-bill is reversed. Each party will pay his or its own costs in this court.

*Affirmed in part and reversed in part.*