(Nos. 38249, 38905 cons.—

ALBERT C. DROSTE, Appellant, *vs.* OTTO KERNER, GOVERNOR, *et al.,* Appellees.—(UNITED STATES STEEL CORPORATION, Intervenor-Appellee.)

*Opinion filed March 24, 1966.—Rehearing denied May 18, 1966.*

496

SCHAEFER, J., dissenting.

CALVIN SAWYIER, of Chicago, for appellant.

WILLIAM G. CLARK, Attorney General, of Springfield, (RICHARD A. MICHAEL and EDWARD A. BERMAN, Assistant Attorneys General, of counsel,) for appellees OTTO KERNER, Governor, and WILLIAM H. CHAMBERLAIN, Secretary of State.

DAVID S. KERWIN, of Chicago, (RALPH PATTERSON, of counsel,) for appellees Commissioners of Chicago Park District.

STEVENSON, CONAGHAN, HACKBERT, ROOKS AND PITTS, of Chicago, (HENRY L. PITTS and JEREMIAH MARSH, of counsel,) for appellee United States Steel Corporation.

Mr. CHIEF JUSTICE KLINGBIEL delivered the opinion of the court:

We have consolidated two appeals seeking to attack an enactment of the Seventy-fourth General Assembly.

The source of the litigation is Senate Bill 782, approved June 26, 1963, whereby the legislature "granted, quit-claimed and conveyed in fee" to the United States Steel Corporation 194.6 acres of land submerged beneath the waters of Lake Michigan, with the proviso that the grant was to become effective when the corporation had paid $19,460 to the State Treasurer, and the Chicago Park District had conveyed all of its right, title and interest in the submerged lands to the State of Illinois. (Laws of 1963, pp. 1229-1231.) Several months later, plaintiff, Albert C. Droste, instituted two separate taxpayer actions to enjoin the sale and transfer, naming as defendants in each action the Commissioners of the Chicago Park District and the Governor and Secretary of State of Illinois. The Governor and Secretary of State have appeared by the Attorney General and support the validity of the act.

One action (No. 38249) was brought purportedly under authority derived from the Public Moneys Act, (Ill. Rev. Stat. 1963, chap. 102, pars. 11—16,) which permits a taxpayer to initiate an action to enjoin the "disbursement" of "public funds" and "public moneys" by State officials. In accordance with such act the action was commenced by filing a petition for leave to file a complaint, the proffered complaint in this instance alleging the constitutional invalidity of S.B. 782. Leave to file was denied, the trial court being of the opinion that a suit to enjoin the conveyance of land was not encompassed by the Public Moneys Act. Plaintiff has appealed directly to this court.

In plaintiff's second action (No. 38905), admittedly initiated because of his doubts as to the statutory footing of his first action, he alleged the constitutional invalidity of S.B. 782, alleged that the conveyance was in violation of the theory of public trust advanced in *Illinois Central Railroad Co. v. City of Chicago,* 173 Ill. 471, and prayed for a decla-

ration of invalidity, an injunction to restrain the conveyance, and a writ of *mandamus* to compel defendants to seek a judicial determination of the validity of the proposed conveyance before the conveyance should be made. Defendants filed motions to dismiss on grounds that plaintiff had not alleged facts showing special damage or injury to himself different in degree or kind from that suffered by the general public, and that he failed to allege facts showing that his taxes would be increased if the conveyance was carried out in compliance with S.B. 782. These motions were denied, whereupon defendants filed answers asserting the validity of the bill. At this point United States Steel Corporation sought and obtained leave to intervene in this action. Its answer described its situation as the owner of all the shore and upland immediately adjacent to the submerged land in question, pleaded the validity of S.B. 782, and, by way of affirmative defense, challenged the standing of plaintiff to maintain the action. In this case the parties elected to offer no proof, and the trial court therefore considered the action as pending on a motion for judgment on the pleadings. After hearing argument, the court found that S.B. 782 was valid, and dismissed the complaint for want of equity. Plaintiff also prosecuted his appeal from that judgment directly to this court.

At the outset, we must consider our jurisdiction to entertain these direct appeals. The parties cannot confer that jurisdiction by consent or acquiesence. *Kelly* v. *Guild,* 25 Ill.2d 511.

The principal ground relied upon by plaintiff to support our jurisdiction is his contention that the act in question violates section 22 of article IV of the Illinois constitution, which imposes certain limitations upon the legislative powers of the General Assembly. It is fundamental that the constitution is not regarded as a grant of powers to the legislative department but every subject within the scope of civil government rests in the General Assembly unless .

inhibited by some constitutional provision. *People* v. *Dale,* 406 Ill. 238.

It was well settled, prior to the constitution of 1870, that subject to the paramount power of the Federal government over commerce, including navigation, title to the lands submerged by the waters of Lake Michigan lying within the boundaries of Illinois rested in the State of Illinois in trust to protect the rights of the public in the use of those navigable waters for fishing, boating, recreation and other public purposes. This did not mean, however, that the shoreline was required forever to remain unchanged except by natural causes. An equally important part of the doctrine was that the State might from time to time relinquish its trust as to specific parcels of submerged lands by action of the General Assembly in granting to a shore owner title to those lands adjacent to his property where the grant was in aid of commerce and where the public interest in the lands and waters remaining was not substantially impaired. *Illinois Central Railroad Co.* v. *Illinois,* 146 U.S. 387, 36 L. Ed. 1018, and authorities cited.

The proper execution of this public trust with respect to submerged lands requires that the conveyance of any particular parcel to a shore owner be consistent with the public interest and not impair the interest of the public in the lands and waters remaining. It would not be possible for the State to make that determination in the administration of the trust unless it has the power to specify the individual or corporation to whom the submerged lands are to be conveyed. We are not prepared to hold that section 22 of article IV of our constitution was intended to abrogate the public trust doctrine with respect to submerged lands or to render that doctrine unworkable.

The plaintiff refers to the clause of section 22 of article IV, which prohibits local or special laws vacating roads, town plats, streets, alleys and "public grounds". We do not believe that it can be fairly said that this general language

evidences an intent on the part of the framers of our constitution to withdraw or impair the legislative power to continue with the administration of its public trust relative to submerged lands. Plaintiff also refers to the further clause of section 22 of article IV which prohibits local or special laws granting to any corporation, association or individual "any special or exclusive privilege, immunity or franchise whatever." Again we think that it would be a very narrow and unrealistic construction of this language to say that it was intended to withdraw, for all practical purposes, the legislature's power to administer its public trust with respect to submerged lands as that power existed in 1870. Had the framers of the constitution intended to impair this well-established power they would have said so in direct and positive language. It is significant that the legislature and those concerned in the carrying out of the law continued after 1870 to administer the public trust doctrine as they had before by making conveyances to shore owners where it was determined by legislative authority that such conveyances would be in aid of commerce and would not substantially impair the public interest in the lands and waters remaining. Furthermore many conveyances and releases by the State of its interest in nonsubmerged lands have, after 1870, been made to individual and corporate grantees upon authority of the General Assembly. This contemporaneous and practical construction over the years by the legislature and those concerned in the administration of the law is entitled to great weight. *Cook County* v. *Healy,* 222 Ill. 310; *People ex rel. Sadler* v. *Olson,* 245 Ill. 288.

Plaintiff places reliance on *Illinois Central Railroad Co.* v. *City of Chicago,* 173 Ill. 471. There the question was whether legislative authority existed to fill in the waters of Lake Michigan. It was held that such legislative authority had not been given and that the fill was therefore improper. That decision does not aid plaintiff.

In *People ex rel. Moloney* v. *Kirk,* 162 Ill. 138, an

action was instituted by the State of Illinois, acting by its Attorney General, questioning the power of the General Assembly to authorize the conveyance to specific shore owners of certain lands, submerged by the waters of Lake Michigan, lying adjacent to their respective properties. While the conveyances were not made directly by the State to the respective grantees, the Board of Park Commissioners was authorized by the statute to execute and make such conveyances to various shore owners. In considering the validity of that statute, we said at p. 148: "The question before us is not one of policy or expediency, but of power. Was the legislature clothed with power to convey reclaimed lands which were originally covered by the waters of Lake Michigan?" We answered that question in the affirmative pointing out that the People had "spoken through their representatives, who were clothed by them with full power to act." If the legislature, as held in the *Kirk* case, had power to authorize such a conveyance to a specific shore owner by the Board of Park Commissioners, an agency of the State, it necessarily follows that the legislature had power to authorize the conveyance provided for by the act in question. In this connection we point out that the legislature, in section 1 of the present statute, expressly declared that "the grant of submerged land contained in this Act is made in aid of commerce and will create no impairment of the public interest in the lands and water remaining, but will instead result in the conversion of otherwise useless and unproductive submerged land into an important commercial development to the benefit of the People of the State of Illinois." The act was duly approved by the Governor and, prior to its passage and approval, the Chicago City Council had unanimously adopted a resolution urging the statute's enactment. We cannot assume that the legislative finding contained in section 1 of the act was factually incorrect or that it was not made in the utmost good faith.

The *Kirk* case, sustaining grants to specified grantees, has never been overruled but has been relied upon by the public and property owners in Illinois over a period of almost 70 years. It has become a rule of property and should not now be overturned.

The plaintiff suggests other constitutional grounds of attack on the statute in question, such as insufficiency of its title and violation of due process. We have carefully examined them and find them to be without merit. The trial court determined that under the constitution and laws of Illinois, including section 22 of article IV of the Illinois constitution, the legislature had the power to pass the legislation in question, and that the act of June 26, 1963, is valid. We conclude that this determination of the trial court is correct.

While we do not agree that the act in question violates section 22 of article IV of the Illinois constitution, as contended by plaintiff, we conclude that the constitutional question raised is sufficient to give this court jurisdiction on these direct appeals. We will therefore pass on to consider the other points raised and argued by the parties.

Plaintiff, in support of his right to sue under the Public Moneys Act in case No. 38249, contends that a liberal construction of the act would make it applicable to this case, and that this court should extend the "expeditious and protective" procedures permitted by the act to all cases where "high public officials" refuse "to subject their own doubtful actions to judicial scrutiny."

Reduced to its simplest terms the first issue presented by plaintiff's arguments is whether the legislature, in enacting the Public Moneys Act, intended for a taxpayer to be given the right to enjoin the conveyance of land by State officers, or, as defendants put it, the right to enjoin a legislative grant of real estate. Plaintiff concedes that the act does not grant such right in express terms, but asks that we liberally construe the words "public funds" to include public

property such as real estate, and on this basis sustain his standing to maintain this action. It is, however, the cardinal rule in the interpretation and construction of statutes that the legislative intention should be ascertained and given effect. (*Petterson* v. *City of Naperville,* 9 Ill.2d 233.) This is done primarily from a consideration of the legislative language itself, which affords the best means of its exposition, and if the legislative intent can be ascertained therefrom it must prevail and be given effect. (*People ex rel. Mayfield* v. *City of Springfield,* 16 Ill.2d 609.) There is no rule of construction which authorizes a court to declare that the legislature did not mean what the plain language of a statute imports, (*City of Decatur* v. *German,* 310 Ill. 591,) and it has been frequently stated that words employed in a statute should be given their plain and ordinary, or commonly accepted or popular, meaning unless to do so would defeat the legislative intent. *Lincoln National Life Ins. Co.* v. *McCarthy,* 10 Ill.2d 489; *Revzan* v. *Nudelman,* 370 Ill. 180.

Applying these criteria here it is manifest that the "liberal construction" for which plaintiff contends cannot prevail. Webster's New International Dictionary, 2d ed. p. 2005, defines "public funds" as being: "Moneys belonging to a government, or any department of it, in the hands of a public official." (See also: Cases collected in Words & Phrases, Perm. ed. vol. 35, pp. 164-172.) Approximately the same definition is given in Black's Law Dictionary, 4th ed., p. 802, and this court has on two occasions stated that the word "funds", in its common usage, "ordinarily means money or negotiable instruments readily convertible into cash, and has been defined as property of every kind when such property is contemplated as something to be used for payment of debts." (*People ex rel. Illinois Armory Board* v. *Kelly,* 369 Ill. 280, 284-285; *Broadway Bank of St. Louis* v. *McGee Creek Levee and Draining Dist.* 292 Ill. 560, 565.) In the face of these accepted meanings, the legislature

could not have contemplated real estate when it referred to "public funds", nor may this court torture the meaning of the words employed to arrive at that result. Furthermore, the Public Moneys Act speaks of permitting a taxpayer to enjoin the "disbursement". of public funds, and a conveyance of land is not a "paying out of revenues" (See: Webster's New International Dictionary, 2d ed., p. 741; Merriam-Webster, Seventh New Collegiate Dictionary, p. 237.). Accordingly, we conclude the trial court was correct in its determination that the Public Moneys Act did not give plaintiff standing to maintain this action.

Nor, as plaintiff alternatively suggests, may this court extend the operation of the act to suits involving the conveyance of land by State officials. Courts have no legislative powers, and their sole function is to determine and, within the constitutional limits of the legislative power, give effect to the intention of the lawmaking body. We will not and cannot inject provisions not found in a statute, however desirable or beneficial they may be. *Western National Bank of Cicero* v. *Village of Kildeer,* 19 Ill.2d 342; *People ex rel. Honefenger* v. *Burris,* 408 Ill. 68.

With respect to plaintiff's second action (No. 38905), it has long been the law in Illinois that an individual, be he a taxpayer, (*Koehler* v. *A Century of Progress,* 354 Ill. 347; *McPike* v. *Illinois Terminal Railroad Co.* 305 Ill. 298,) or a property owner, (*McCormick* v. *Chicago Yacht Club,* 331 Ill. 514; *Carstens* v. *City of Wood River,* 344 Ill. 319,) in the absence of statutory authority conferring such right, has no standing in equity to enjoin an alleged misuse of property held in trust for the public,' unless he alleges and proves that he will suffer special damage, different in degree and in kind from that suffered by the public at large. The amended complaint of plaintiff in this action is totally devoid of allegations which set forth such special damage. Without such allegations he has no standing to bring this suit.

The complaint in this action also alleged that plaintiff was seeking to enjoin the expenditure of public funds and, with respect thereto, it was alleged that in order to carry out S.B. 782, State funds would be expended for the preparation of land surveys, economic surveys, title reports, land use maps, expenses of recording and the like. We believe these allegations amount to no more than speculative conclusions. But in any event, the expenditures which plaintiff alleges are *de minimis* for purposes of standing to sue as a taxpayer. (See: *Payne* v. *Emmerson,* 290 Ill. 490, 495; *Fletcher* v. *City of Paris,* 377 Ill. 89.) As was said in *Ryan* v. *City of Chicago,* 369 Ill. 59, 64, under comparable circumstances, such items of expense are "too trifling to be reflected in appellant's tax bills." In addition, the complaint alleges that the use of the property by the grantee will cause the city of Chicago and the State of Illinois to make large expenditures of public funds for roads, sewers and other public improvements. Once again, however, such allegations are purely conjectural, and are unsupported by any of the provisions of S.B. 782. We conclude that cause No. 38905 was properly dismissed for the failure of plaintiff to allege facts giving him standing to maintain the action.

The decrees of the court below are affirmed.

*Decrees affirmed.*

Mr. JUSTICE SCHAEFER, dissenting:

By a curious inversion the majority opinion first decides the case on the merits, and then determines that the plaintiff has no standing to raise the issues that have already been decided. I am unable to agree with either determination. The nature of the problems, and their importance, preclude a cursory statement of the reasons for my disagreement.

Illinois has long recognized the right of a citizen and taxpayer to sue in equity to enjoin the misappropriation of public funds. In *Colton* v. *Hanchett,* (1852) 13 Ill. 615, a taxpayer was permitted to sue to enjoin the county Board

of Supervisors from illegally disbursing county revenue, because the case involved "a question affecting the public interest" and because no other remedy was as "direct, speedy and efficacious." And in *City of Springfield* v. *Edwards,* (1877) 84 Ill. 626, the court sustained an injunction to restrain the incurring of municipal indebtedness in violation of the constitutional debt limit, saying: "We may dismiss the objection that the complainant does not show in his bill that he is injured by the acts complained of, otherwise than in common with all other tax-payers in the city, with the observation that it has been held in this State that such an injury is sufficient to entitle him to an injunction, and that the question is not open to further discussion. *Colton et al.* v. *Hanchett et al.* 13 Ill. 615; *Perry et al.* v. *Kinnear et al.* 42 id. 160; and *Beauchamp* v. *Board of Supervisors, etc.* 45 id. 274." 84 Ill. at 631.

In 1887 the doctrine that had previously been applied to illegal expenditures of public funds was applied to the illegal disposition of public land. In *McCord* v. *Pike,* 121 Ill. 288, the court held that a taxpayer's bill in equity would lie to restrain the board of county commissioners of Cook County from illegally executing and delivering a deed conveying property of the county. In *Littler* v. *Jayne,* (1888) 124 Ill. 123, the court applied the same doctrine to the misuse of state assets. In this case a state taxpayer sought to enjoin the State House Commissioners from approving vouchers which would have led to the expenditure of funds under an illegal contract. Without prolonged discussion, and upon the authority of the local government cases, the propriety of the action was sustained. See also *Burke* v. *Snively,* (1904) 208 Ill. 328.

In 1915 the court decided *Jones* v. *O'Connell,* 266 Ill. 443, and *Fergus* v. *Russel,* 270 Ill. 304. In the *Jones* case a taxpayer brought an action to restrain the county treasurer of Cook County from illegally retaining a percentage of inheritance taxes which he would collect in the future, and

to compel him to pay over to the state treasurer amounts he had illegally retained in the past. In sustaining the plaintiff's right to equitable relief, the court said: "If taxpayers have a right or interest which the bill in this case was intended to protect it is of a purely equitable nature, the legal right and title being in the State. If the defendant, O'Connell, has money in his hands which he has no right to retain but which he is bound to pay to the State treasurer, the sum retained by him must be made up by taxation, and every tax-payer has an equitable right to see that the money so unlawfully retained shall be paid to the State treasurer for the use of the State. This court has always recognized that rule and has uniformly held that the tax-payers are in equity the owners of the property of a municipality, and whenever public officials threaten to pay out public funds for a purpose unauthorized by law or misappropriate such funds, equity will assume jurisdiction to prevent the unauthorized act or to redress the wrong, and this is because the right and interest are equitable in their nature and are not recognized by courts of law." 266 Ill. at 447.

In *Fergus* v. *Russel,* the underlying basis of the tax-payer's suit was again articulated. There a state taxpayer sued to enjoin the payment of a number of legislative appropriations. The court said "We have repeatedly held that tax-payers may resort to a court of equity to prevent the misapplication of public funds, and that this right is based upon the tax-payers' equitable ownership of such funds and their liability to replenish the public treasury for the deficiency which would be caused by the misappropriation. * * * Upon principle and reason we perceive no distinction between the right of a taxpayer to enjoin the misappropriation of public funds from a municipal treasury and the right to enjoin an invalid appropriation of the public funds from the State treasury." 270 Ill. at 314, 315.

The majority opinion disposes of plaintiff's right to maintain his nonstatutory action in a single sentence, stating

that a taxpayer "has no standing in equity to enjoin an alleged misuse of property held in trust for the public, unless he alleges and proves that he will suffer special damage, different in degree and in kind from that suffered by the public at large." In reaching this conclusion the court relies upon two decisions which involved taxpayers' actions: *Koehler* v. *A Century of Progress*, 354 Ill. 347, and *McPike* v. *Illinois Terminal Railroad Co*. 305 Ill. 298. These decisions do not, in my opinion, justify a departure from the long-standing recognition of the right of a taxpayer to enjoin the illegal alienation of public property.

In *Koehler* v. *A Century of Progress* a taxpayer was denied standing to enjoin an alleged temporary misuse of public land and to seek the appointment of a receiver to collect "just and reasonable" rents from the private corporation which was permitted to use the public land. The court said: "The lands involved here and which are described in the bill are held in trust by the South Park Commissioners for the use of such lands by the public. An obstruction or mis-use of public property which does not result in special injury to the individual cannot be complained of except by the people. To entitle a tax-payer to maintain a bill to enjoin a breach of public trust, he must, in the absence of statutory authority conferring such right, show that he is specially injured thereby. * * * He is entitled to invoke equitable jurisdiction only to protect his property from threatened injury, and unless it is shown that he will suffer damage, different in degree and kind from that suffered by the public at large, he will not be heard to complain of mis-use of public property. *Carstens* v. *City of Wood River*, 344 Ill. 319; *McCormick* v. *Chicago Yacht Club*, 331 id. 514; *McPike* v. *Illinois Terminal Railroad Co*. 305 id. 298; *Hill* v. *St. Louis and Northeastern Railway Co*. 243 id. 344." 354 Ill. at 349, 350.

In *McPike* v. *Illinois Terminal Railroad Co*. the court said: "The rule is that the obstruction or misuse of streets

or other like property held by the city for the use of the public which does not result in special injury to the individual cannot be complained of by an individual. If special injury results to the individual he may enjoin such obstruction although the city has given its acquiescence thereto. (*Oehler* v. *Levy*, 234 Ill. 595; *Hamilton* v. *Semet Solvay Co.* 227 id. 501; *Guttery* v. *Glenn, supra; City of Chicago* v. *Union Building Ass'n*, 102 Ill. 379; *McDonald* v. *English*, 85 id. 232.)" 305 Ill. at 302.

The cases relied upon by the majority and the line of authority of which they are a part rest upon considerations other than those that have supported the taxpayer's action. Their roots lie in the doctrine of public nuisance and they have regarded the encroachments, obstructions and misuse of public property with which they were concerned as public nuisances. In *Guttery* v. *Glenn*, 201 Ill. 275, 290-291, for example, the court said: "If, however, it were true that Union street is a street, which crosses the public square, then its enclosure by the board of trustees was a public nuisance. It is well settled that a public nuisance will not be restrained at the suit of a private person, unless such person suffers therefrom a special and particular injury distinct from that suffered by him in common with the public at large. In the American and English Encyclopedia of Law, (vol. 10— 1st ed.—p. 838) it is said: 'Where the nuisance is public, the plaintiff, to obtain an injunction, must allege in his bill, and prove if need be, special damages peculiar to himself distinct from the public at large.' In *McDonald* v. *English*, 85 Ill. 232, we said (p. 236): 'We regard the rule as well settled, that for any obstruction to streets, not resulting in special injury to the individual, the public, only, can complain. Where, however, the obstruction is such that a public prosecution is authorized, and, at the same time, an individual has been specially injured thereby, as well as where the act has been private and an offense against the individual, solely, he may maintain an action and recover for

his special injury.' (*City of Chicago* v. *Union Building Assn.* 102 Ill. 379; *City of East St. Louis* v. *O'Flynn,* 119 id. 200; *Smith* v. *McDowell,* 148 id. 51; *Pittsburg, Fort Wayne and Chicago Railway Co.* v. *Cheevers,* 149 id. 430; *Chicago General Railway Co.* v. *Chicago, Burlington and Quincy Railroad Co.* 181 id. 605)."

*City of· Chicago* v. *Union Building Association,* 102 Ill. 379, appears to be the primary authority in this line of cases. And in that opinion, which was written by Mr. Justice Scholfield, the public nuisance flavor strongly appears in the authorities relied upon. Five years later, Mr. Justice Scholfield also wrote the opinion of the court in *McCord* v. *Pike,* 121 Ill. 288, a taxpayer's action to restrain the members of the Board of County Commissioners from executing and delivering a deed conveying property owned by the county. In sustaining the taxpayer's action, he said: "The first question to be considered is, will a bill in equity, by tax-payers, lie in a case like the present? The contention of plaintiff in error is, that such a bill will lie only in the name of the Attorney General, or of the State's attorney of the county, as the representative of the public. In some States, and notably in New York, this is the rule. (See *Roosevelt* v. *Draper,* 23 N.Y. 108.) But the ruling in this State is different. It is here held, that where an unjust and illegal burden is being imposed on the tax-payer by the municipality, or the money or property of the municipality, to replace which taxation must be levied, is being wasted or squandered, the tax-payer has such a direct interest that a bill to enjoin the threatened burden will lie. *Colton* v. *Hanchett,* 13 Ill. 615; *Prettyman* v. *Supervisors,* 19 id. 406; *Perry* v. *Kinnear,* 42 id. 160; *Drake* v. *Phillips,* 40 id. 389; *Chestnutwood* v. *Hood,* 68 id. 132; *Devine* v. *County Commissioners,* 84 id. 590; *Mayor of Springfield* v. *Edwards,* 84 id. 626; *Railroad Co.* v. *People,* 92 id. 170; *Leitch* v. *Wentworth,* 71 id. 147.

"It seems to be supposed that something was said in

*Chicago* v. *Building Association,* 102 Ill. 379, contrary to this rule. It is very certain that was not intended, and, we think, if the question there really under consideration be kept in view, and it be also kept in view that the language employed was with reference to that question only, it will appear that nothing there said can reasonably be held to have the effect of announcing a different rule. from that sustained by the cases cited *supra."* 121 Ill. at 290-291.

The distinction between the two lines of cases lies in the fact that in the cases involving misuse, obstructions and encroachments the complaints are "bottomed on the proposition that the alleged illegal use of the park property was of special injury and damage to his [the plaintiff's] property." (*Carstens* v. *City of Wood River,* 344 Ill. 319, 321-322.) The taxpayer's right to sue does not, however, depend upon any injury to his property. Indeed, he need not be an owner of real property. His right to sue is grounded upon his status as a taxpayer, and it is his equitable interest, as a taxpayer, in the public property which is being illegally disposed of that determines his standing to maintain the action.

In my opinion, neither *Koehler* v. *A Century of Progress* nor *McPike* v. *Illinois Terminal Railroad Co.* can be regarded as overturning the established policy of the State with respect to the rights of taxpayers. That policy had been adhered to by this court throughout the history of the State both before and after those decisions. (See *Bowes* v. *City of Chicago,* (1954) 3 Ill.2d 175.) That the legislature did not intend that a citizen and taxpayer should be forced to rely solely upon the efforts of public law officers for the protection of public rights is apparent from the statute referred to in the opinion of the majority. And the legislative policy is further illustrated by another statute, enacted in 1871, which allows a taxpayer to sue any person to recover "any money or property belonging to the municipality." Laws of 1871, p. 218, art. X, sec. 4; now Ill. Rev. Stat. 1963, chap. 24, par. 1—5—1.

There is apparently no decision in a taxpayer's action which has squarely involved the disposition of public property of the state, as distinguished from the disbursement of its public funds. But no reason has been suggested to support a distinction between the two situations. *McCord* v. *Pike,* (1887) 121 Ill. 288, held that with respect to local units of government no such distinction should be drawn, and I see no justification for a different conclusion with respect to the funds and property of the State. I would therefore hold that the plaintiff has standing to maintain his action and thus reach the merits.

The plaintiff challenged the validity of S.B. 782 on the ground that it is special legislation in violation of section 22 of article IV of the constitution of Illinois. That section provides: "The general assembly shall not pass local or special laws in any of the following enumerated cases, that is to say: for—* * * Vacating roads, town plats, streets, alleys and public grounds; * * * Granting to any corporation, association or individual any special or exclusive privilege, immunity or franchise whatever." S.B. 782 unmistakably grants to the United States Steel Corporation the "special or exclusive privilege" of removing materials from the bed of Lake Michigan without paying the statutory charge of 10 cents per cubic yard which the Department of Public Works and Buildings would otherwise be authorized to impose. S.B. 782 also terminates the rights of the public in lands submerged beneath the waters of Lake Michigan and grants those lands to the United States Steel Corporation, and it is thus a special law "vacating public grounds." In my opinion it clearly falls within the constitutional prohibitions against special legislation.

The steel company cited four cases in support of the validity of the statute. The most recent of these, *Smith* v. *Virgin Islands,* (3rd cir. 1964) 329 F.2d 135, (*cert.* denied 377 U.S. 979, 12 L. Ed. 2d 747,) sustained a grant of public land to a private corporation against an attack upon due

process grounds. There is no mention in the opinion of any constitutional provision against special legislation. In *Roberts* v. *Brooks,* (E.D.N.Y. 1896) 71 Fed. 914, (affirmed on other grounds, (2d cir. 1897) 78 Fed. 411,) an act of the New Jersey legislature which granted a private person the right to "erect and maintain" a private dock over State tidal lands was challenged as repugnant to a subsequently enacted provision of the New Jersey constitution "forbidding the grant to any corporation, association, or individual any exclusive privilege, immunity or franchise whatever." Concerning this constitutional provision, the court said: "This would seem to apply to incorporeal things, and not to curtail the right of the legislature to dispose of the state's tangible property; but, if it did, it appears not to have been adopted till 1875—long after this grant." (71 Fed. at 915.) In *First Construction Co. of Brooklyn* v. *State,* (1916) 156 N.Y.S. 911, the appellate division held that a grant to a corporation of lands submerged under tidal waters conformed to a State constitutional provision which authorized the appropriation of "public moneys or property" for private purposes upon the vote of two thirds of the members of each house of the legislature, and therefore did not violate another section of the State constitution which prohibited the grant of an "exclusive privilege, franchise or immunity" to a private corporation. In *Patterson* v. *Trabue,* (1830) 26 Ky. 598, a State legislative grant of land to a private person was sustained against a challenge on the ground that it violated a constitutional provision prohibiting "the granting of exclusive privileges." The court said: "The commonwealth is absolute proprietor over its vacant domain. She may sell it upon such terms as she deems fit. * * * "every patent for land grants an exclusive privilege to the patentee * * *."

To the extent that these four decisions bear at all upon the problem before this court, they are certainly not decisive. None of them involves a constitutional prohibition

against special legislation "vacating public grounds", and none involves the grant of a special privilege like the privilege to remove fill from the bed of the lake without cost which is granted to the steel company by S.B. 782.

The opinion of the majority does not mention the cases relied upon by the steel company. Instead, it bases its conclusion that S.B. 782 is valid upon what is to me a surprising misreading of the opinion of this court in *People ex rel. Moloney* v. *Kirk,* 162 Ill. 138. That case involved the extension of Lake Shore Drive in Chicago over submerged lands of the State. The extension was to be located more than 1000 feet east of the westerly shore line of the lake. The statute in question authorized the park commissioners to acquire "the riparian or other rights" of the shore owners by purchase or eminent domain, and it also provided that: "* * * in all cases where any boulevard or driveway is extended under the provisions hereof, the submerged lands lying between the shore of such public waters and the inner line of the extension of such boulevard or driveway shall be appropriated by the board of park commissioners to the purpose of defraying the cost of such extension, and to that end such board of park commissioners are authorized to sell and convey such submerged lands in fee simple, by deeds duly executed on its behalf by its president and under its corporate seal, and every deed executed in pursuance hereof shall vest a good title in the grantee to the premises intended to be conveyed thereby."

Concerning the statute involved in the *Kirk* case, the majority opinion states: "* * * the Board of Park Commissioners was authorized by the statute to execute and make such conveyances *to various shore owners.*" (Emphasis supplied.) But the statute involved in the *Kirk* case did *not* authorize the park commissioners to execute conveyances "to various shore owners." If it had done so, it would have presented the problem raised in the case before us. Instead, it authorized the park commissioners to sell and convey the

submerged lands for the purpose of defraying the cost of the extension of Lake Shore Drive.

The opinion of the majority apparently attaches great significance to the fact that in the *Kirk* case the submerged lands were ultimately conveyed to specific grantees. But this fact is of no significance in determining whether or not the legislation authorizing the conveyances is special or general. Every conveyance must run to a specific grantee. The statute in the *Kirk* case neither named nor identified the grantees of the submerged land that was to be reclaimed, whereas the statute in the present case is itself a conveyance to a specific grantee.

The contention that invalidation of this statute as special legislation would cast doubt on titles that rest upon previous conveyances of this type is not convincing. The equitable doctrine of *laches* is applicable to taxpayers' actions, (*Bowman* v. *County of Lake,* (1963) 29 Ill.2d 268, 280, and if a taxpayer has stood by without asserting his rights until the grantee has proceeded by partial or complete use under the grant, the defense of *laches* would be applicable against the taxpayer and the defense of estoppel against the public authorities, including the State. See *People ex rel. Prindable* v. *New York Central Railroad Co.* 400 Ill. 507, 516-18; *Clokey* v. *Wabash Railway Co.* 353 Ill. 349, 370; *Melin* v. *Community Consolidated School District,* 312 Ill. 376, 383; *State* v. *Illinois Central Railroad Co.* 246 Ill. 188, 234-5.

The State is not precluded from effectively providing for the disposition of its public grounds. The General Assembly has enacted general statutes providing for the disposition of land of municipal corporations and park districts. (See *e.g.,* Ill. Rev. Stat. 1963, chap. 24, pars. 11—76—1, 2, 3; chap. 105, pars. 10—7, 10—7a-d.) Indeed, general statutory provisions were involved in the two leading cases in which substantial grants of submerged land were sustained by this court. (*People ex rel. Moloney* v. *Kirk,* (1896) 162 Ill. 138; *Bowes* v. *City of Chicago,* (1954) 3 Ill.2d 175.) The

516

considerations advanced to justify the enactment of S.B. 782—the provision of a substantial base for the imposition of general property taxes, the job creating potential of the proposed use, and the like,—can be taken into account in such legislation.

For example, if the State should decide that it would be in the public interest that a particular parcel of submerged land underlying Lake Michigan be filled in and devoted to some other purpose, the General Assembly might so declare and might offer the submerged lands for development for the use or uses so determined. A conveyance of the land in question to the highest and best bidder, having in view the legislative purpose for which the land is to be filled in, might then be authorized. In such a procedure, it would, of course, be necessary to compensate the abutting owner for the loss of his right of access. But a conveyance resulting from such a procedure would be very different from what is before us—a legislative conveyance to a particular grantee for an unspecified use. Such a conveyance, in my opinion, is exactly what the constitutional provision against special legislation vacating public grounds was designed to prevent.